STATE OF NEBRASKA, APPELLEE, V. CHARLES T. COOK, APPELLANT.
463 N.W.2d 573

Filed November 30, 1990.    No. 89-1344.

Rodney J. Palmer, of Palmer & Kozisek, P.C., for appellant.

Robert M. Spire, Attorney General, and Alfonza Whitaker for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

## I. INTRODUCTION

Defendant, Charles T. Cook, pled guilty to a charge of sexual assault of a child, in violation of Neb. Rev. Stat. § 28-320.01(1) (Reissue 1989), and was so adjudged. He was thereafter sentenced to imprisonment for a period of not less than 1½ nor more than 5 years, was fined $2,500, and, because the trial judge found that he is a treatable mentally disordered sex offender, was committed to the Lincoln Regional Center until he received the maximum treatment, served his sentence, or was discharged. Cook assigns two errors, claiming that the trial judge erred by (1) refusing to receive at the sentencing hearing the testimony of a psychiatrist challenging the result of an intelligence test administered by a psychologist, and (2) finding his status to be that of a treatable mentally disordered sex offender. We affirm.

## II. FACTS

The record shows that Cook engaged in a sexual relationship resulting in at least 15 instances of intercourse with the eldest of his four stepdaughters during a 1- to 1½-year period. He was 22 years old when the relationship began and 23 years 9 months old when it ended; the stepdaughter was 12 years old and 13 years 11 months old, respectively. After the relationship ended at the stepdaughter's request, Cook attempted on more than one occasion to reinitiate it. He also, during the year-plus that elapsed from the end of the relationship to the time it came to light, made a sexual advance toward another stepdaughter, who was then 11 years old.

The court below ordered Y. Scott Moore, a psychiatrist, and H.L. Balters, a clinical psychologist, to examine Cook and file written reports expressing whether, in each of their opinions, Cook is a mentally disordered sex offender. Moore and Balters each submitted a report stating that in his opinion, Cook is such a person and, in Moore's opinion at least, is treatable.

It is apparent, however, that Moore was somewhat mistaken as to the victim's age at the relevant time, for his report states that Cook "actively engaged in sex with a 10 to 12 year old girl over a year and a half," when in fact the victim was, as stated

earlier, a bit older. Moore's finding that Cook is a mentally disordered sex offender appears to be based on the facts that Cook engaged in regular sexual intercourse with a child over a period of $1^1/_2$ years, that he had that child perform oral sex on him, that he sexually approached the child's younger sister, and that he displayed a "rather cavalier [attitude] about the entire episode."

Balters had Cook submit to, among other things, an intelligence test, on the basis of which Balters concluded that Cook functioned within the superior range of intellect. This result was somewhat at odds with other test results, and as a consequence, Balters noted that "[p]robably the most that one can attribute to these actuarial scores is that [Cook] is somewhat more adept at being able to decipher abstract relationships than he is for contending with words and verbal concepts." There is no indication, other than the above-quoted reference, that any of the test results constituted a basis for Balters' conclusion that Cook is a mentally disordered sex offender.

After receiving the foregoing evaluations, Cook was permitted to obtain additional separate evaluations by Daniel K. Sturgis, a clinical psychologist, and J.N.L. O'Sullivan, a psychiatrist. Each rendered a report opining that Cook is not a mentally disordered sex offender.

Sturgis administered a different intelligence test than did Balters, the results of which indicated that Cook's intellectual ability fell within the average range, and Sturgis specifically questioned Balters' finding that Cook's intellectual ability fell within the superior range. Sturgis agreed, however, with Balters' interpretation of another test that Cook would have trouble following societal standards and that psychological treatment would be difficult. Sturgis also expressed the views that the program at the Lincoln Regional Center was in turmoil because of changes in the professional staff, that the facility was misused, and that Cook was not a good candidate for placement therein.

O'Sullivan observed that Cook claimed Balters had had him complete tests at home. While O'Sullivan did not conduct any formal intelligence tests on Cook, he was of the opinion that

Cook was "functioning in the low normal range of intellectual functioning." In O'Sullivan's opinion, it would be advisable, should Cook be incarcerated in the "Lincoln State Penitentiary," to have him participate "in whatever therapeutic programs are currently available there."

When asked at the sentencing hearing if he had any additions or corrections to the presentence report, which contained the four evaluations detailed above, Cook did not dispute any of the reported facts but did offer some letters of recommendation regarding his sentence. These letters were made a part of the presentence report.

Cook then called O'Sullivan as a witness and attempted to elicit testimony concerning the proper manner of administering the intelligence test given him by Balters. The trial judge, in response to the State's objections, refused to receive that evidence, saying:

> Nor do I care to have the doctor sit here and criticize the other doctors. Not only would I not like it, but it wouldn't be right.
>
> . . . .
>
> . . . I do not care to have the doctor's criticism of the other doctors' work. If we are going to do that, I have to get the other doctors here to defend themselves . . . .
>
> . . . .
>
> . . . I do not care for such testimony and will not listen to it. . . .
>
> . . . .
>
> . . . [U]nder Section 29-2913, the reports of the mentally disordered sex offender, of the defendant evaluations shall be made a part of the presentence and shall be filed with the court at least ten days prior to the date set for sentencing. Copies of such reports shall be furnished to the county attorney. The effect of [the] oral testimony is to expand that report as of the day of the sentencing. I do not think that is a fair procedure, and I do not think that it is one that will lend towards the quest for truth, but only the truth as one side sees it, and therefore I will not let you expand on the report except if there is some additional information relative to the defendant, and then I will, but

otherwise I will not hear it.

In later overruling Cook's motion for new trial, the trial judge stated that in his opinion Cook's experts, in discussing what was wrong with the system and advising as to the penalty the court should impose, had become advocates and had thereby destroyed their credibility with him.

## III. RELEVANT STATUTES

The process of identifying and dealing with mentally disordered sex offenders is controlled by Nebraska's mentally disordered sex offender act, Neb. Rev. Stat. §§ 29-2911 through 29-2921 (Reissue 1989). Under the act the commission of, among other things, any felony in which the sexual excitement of the person committing the crime is a substantial motivational factor is a sexual offense. § 29-2911(1)(b). According to Neb. Rev. Stat. § 28-318(5) (Reissue 1989), sexual contact consists of the intentional touching of a

> victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts. Sexual contact shall also mean the touching by the victim of the actor's sexual or intimate parts or the clothing covering the immediate area of the actor's sexual or intimate parts when such touching is intentionally caused by the actor. Sexual contact shall include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party.

The "actor" is the "person accused of sexual assault." § 28-318(1).

Section 28-320.01(1) provides that one "commits sexual assault of a child if he or she subjects another person fourteen years of age or younger to sexual contact and the actor is at least nineteen years of age or older" and that such an assault is a felony.

It is therefore clear that by pleading guilty to sexual assault of a child, in violation of § 28-320.01, Cook admitted that he had engaged in conduct which involved sexual arousal and that he had thus committed a "sexual offense," as defined in § 29-2911(1)(b).

Section 29-2911(2) provides that one who has a mental disorder and who, because of that disorder, has been determined to be disposed to repeated commission of sexual offenses which are likely to cause substantial injury to the health of others is a mentally disordered sex offender.

Section 29-2912 requires that prior to sentencing a person convicted of a felony sexual offense, "the court . . . shall order a presentence investigation which shall include an evaluation to determine whether the defendant is a mentally disordered sex offender."

Section 29-2913 provides:

> To conduct the evaluation the court shall appoint a panel of two physicians, licensed to practice medicine and surgery who have had at least three years of special training in treatment of mental disorders or one such physician and one clinical psychologist who has had at least three years of special training in treatment of mental disorders, to conduct individual psychiatric examinations of the defendant. The panel shall file with the court a written report as to whether in its opinion, the defendant is a mentally disordered sex offender. Such reports shall include the facts on which the conclusions are based and shall be filed at least ten days prior to the date set for the sentencing of the defendant. Copies of the reports shall be furnished to counsel for the defendant. If the defendant, or counsel for the defendant, disagrees with the conclusions of the court-appointed panel he or she may file a motion with the court requesting an additional evaluation by two other physicians of the defendant's choice licensed to practice medicine who have had at least three years of special training in the treatment of mental disorders or one such physician and one clinical psychologist who has had at least three years of special training in treatment of mental disorders. . . . Such additional evaluation shall be made part of the presentence investigation and shall be filed with the court at least ten days prior to the date set for sentencing. . . .

Section 29-2915 provides:

> If the court determines that: (1) The defendant is a

mentally disordered sex offender based on the information and conclusions in the presentence investigation; (2) the disorder is treatable; and (3) such treatment is available in the state, the court shall, after first sentencing the defendant as provided by law for the offense for which he or she has been convicted, commit the defendant for treatment to one of the regional centers until such time as the court determines based on the report filed by the Sentencing Review Committee established under section 29-2916 that the defendant is no longer mentally disordered or until the defendant has received the maximum benefit of treatment, except that no sentence to treatment shall exceed the maximum length of such offender's sentence. If the defendant is sentenced to a county jail as a misdemeanant, he or she shall be entitled to have his or her jail sentence reduced while in the county jail or regional center pursuant to section 47-502. If the defendant is discharged from the regional center prior to the maximum length of such offender's sentence, further disposition shall be consistent with sections 29-2919 and 29-2920.

The entire proceeding to determine whether the defendant is a mentally disordered sex offender and treatable shall be deemed a critical stage of a criminal prosecution at which the defendant shall be accorded all the rights a defendant has in sentencing proceedings. The court's decision that the defendant is a mentally disordered sex offender and the decision to commit the defendant for treatment may be appealed. On appeal the presentence investigation shall be made part of the record of the court.

## IV. ANALYSIS

### 1. CONSTITUTIONAL CLAIMS

Cook contends in connection with the first assignment of error that the trial judge erred in refusing to receive O'Sullivan's testimony concerning the proper method of administering the intelligence test given by Balters. In apparent reliance upon *Vitek v. Jones*, 445 U.S. 480, 100 S. Ct. 1254, 63 L. Ed. 2d 552

(1980), he argues, in effect, that the trial judge's ruling offends the confrontation clause of the 6th amendment and the due process clauses of the 5th and 14th amendments to the Constitution of the United States. We know of no rule of law which permits a trial judge to exclude testimony merely because it offends him or her, nor one which permits a court to prohibit one expert from disagreeing with another. However, the real question is not whether it was appropriate for the trial judge to exclude O'Sullivan's testimony on those grounds, but whether Cook, at the subject phase of the proceeding, was entitled to confront the witnesses against him and to adduce testimony, for if he had no such rights, the trial judge ruled correctly, and the erroneous reasons become immaterial. See *State v. Bradley, ante* p. 371, 461 N.W.2d 524 (1990) (citing *Holt County Co-op Assn. v. Corkle's, Inc.,* 214 Neb. 762, 336 N.W.2d 312 (1983), for the proposition that the right result reached for the wrong reason will be affirmed).

That a criminal defendant is not accorded the same procedural protections during sentencing as during the guilt-determining phase of trial is a settled principle of constitutional law. *Williams v. New York,* 337 U.S. 241, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949). A five-member majority in *State v. Miller,* 221 Neb. 862, 865, 381 N.W.2d 156, 158 (1986), observed that "[a]lthough a defendant is entitled to due process upon sentencing, the Constitution does not require that he be given the full panoply of rights accorded when the issue is guilt or innocence," and held that a sex offender was not entitled to confront adverse witnesses on the issue of whether the offender is mentally disordered. In *State v. Shockley,* 231 Neb. 247, 435 N.W.2d 903 (1989), the same majority of this court refused to hold the subject act unconstitutional on the grounds it deprived an offender of his or her rights of due process, confrontation, and compulsory process, and held that the procedural protections afforded by the act were constitutionally adequate.

Nonetheless, Cook calls to our attention that in *Vitek,* the U.S. Supreme Court held unconstitutional, on due process grounds, Nebraska's practice of involuntarily transferring prisoners deemed mentally ill or defective, and not treatable in their current facility, to mental hospitals. The decision to

transfer was, under Neb. Rev. Stat. § 83-180(1) (Reissue 1987), discretionary with the Director of Correctional Services, who was to base his decision upon the report of a designated physician or psychiatrist. Any prisoner transferred could not be held in a mental hospital after his sentence had expired unless he was civilly committed. The *Vitek* Court ruled that any such transfer implicated a liberty interest which could be protected by providing the prisoner, prior to transfer, with written notice of the impending transfer; a hearing before an independent fact finder at which the evidence relied upon for the transfer is disclosed to the prisoner, and the prisoner, who is to be given competent assistance, is permitted, in the absence of a showing of good cause why such cannot be, to present the testimony of witnesses and to confront and cross-examine the State's witnesses; a written statement of the evidence relied on and the reasons for the transfer; and effective and timely notice of the foregoing rights.

Cook inferentially argues that the liberty interest of a sex offender not to be branded as mentally disordered and treatable and thus forced to undergo unwanted mental treatment is no different from that of a prisoner who does not wish to be labeled mentally ill and compelled to undergo undesired mental treatment. We must therefore assess whether the interest claimed by Cook is subject to confrontation and due process protections.

## (a) Confrontation

The sixth amendment right to be "confronted with the witnesses against" one is not applicable to the sentencing phase of a criminal trial. *State v. Anderson and Hochstein*, 207 Neb. 51, 296 N.W.2d 440 (1980), *cert. denied* 450 U.S. 1025, 101 S. Ct. 1731, 68 L. Ed. 2d 219 (1981); *Williams v. New York, supra.* In the sentencing context the right of confrontation is subsumed in the principles of due process. See *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Thus, we move on to a consideration of the due process criteria involved.

## (b) Due Process

A claim that one is being deprived of a liberty interest without due process of law is typically examined in three stages.

The question in the first stage is whether there is a protected liberty interest at stake. If so, the analysis proceeds to the second stage, in which it is determined what procedural protections are required. Upon the resolution of that issue, the analysis moves on to the third and final stage, in which the facts of the case are examined to ascertain whether there was a denial of that process which was due. See, e.g., *Washington v. Harper*, _____ U.S. _____, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990).

### (i) Nature of Interest

In view of the determination we make in the second stage of this due process analysis, we assume that a sex offender has a liberty interest in not being branded as mentally disordered and treatable such as to entitle the offender to the protections of the due process clauses.

### (ii) Procedural Protections Required

In embarking on the second stage of the analysis, we recall that "[t]he procedural protections required by the Due Process Clause must be determined with reference to the rights and interests at stake in the particular case." *Washington v. Harper, supra* at 110 S. Ct. at 1040-41. As noted in *Mathews v. Eldridge*, 424 U.S. 319, 334-35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976):

> [R]esolution of the issue whether the . . . procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. [Citations omitted.] More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: *First*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation omitted.]

(Emphasis supplied.)

The first *Mathews* factor has been treated in part IV(1)(b)(i)

above. We thus embark on a consideration of the second *Mathews* factor, i.e., the risk of an erroneous deprivation of the protected interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards.

In *Vitek v. Jones*, 445 U.S. 480, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980), there were virtually no procedural protections; the prisoner was given no opportunity to question the adverse opinion of the physician or psychologist designated by the administrator who operated the prison and sought to effect the transfer, and the decision to transfer the prisoner was made by that very same administrator.

By way of contrast, the subject act provides a number of procedural protections. Although the opinions need not be unanimous, see *State v. Todd*, 223 Neb. 462, 390 N.W.2d 528 (1986), the trial court must nonetheless solicit two written opinions from mental health experts; the reports and findings are furnished to the offender prior to the sentencing hearing; and if the offender disagrees with the conclusions of the court-appointed experts, he or she may obtain additional evaluations by two qualified mental health experts of the offender's choice. § 29-2913. Moreover, an independent judge makes the decision as to whether the offender is mentally disordered and treatable, not an administrator with an interest in the outcome. §§ 29-2914 and 29-2915. Finally, the act provides for periodic review of an offender's status as one who is treatably mentally disordered. §§ 29-2916 to 29-2918.

Therefore, the risk of an erroneous determination that a convicted sex offender is mentally disordered and treatable is far lower than the risk assessed in *Vitek*, and the additional safeguard provided by the adduction of testimonial evidence would not significantly reduce the present low risk of an erroneous determination. By first giving the offender access to the reports of the court-appointed experts and permitting the offender to then select other experts allows the offender a meaningful means to rebut any adverse opinion.

The final *Mathews* factor to consider when determining what process is due in a given situation is the governmental interest, "including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge, supra* at 424 U.S. at 335. The *Vitek* Court recognized that the State's interest in placing the mentally ill prisoner in the facility best equipped to treat the prisoner's condition was strong. The State's interest in this case is even stronger, for the State is attempting not only to treat the specific condition which led to the commission of the specific sexual offense involved, but to render treatment calculated to reduce the likelihood of future repetition of such offenses. The State's interest in question is sufficiently strong and the likelihood of appreciably reducing the risk of an erroneous determination low enough that the State need not be burdened with greater expense and further consumption of judicial time.

### (iii) Application of Principles

The foregoing determination brings us to the third and final stage of the due process analysis, an application of the due process principles developed in the preceding part of this opinion to the facts of the case at hand in order to determine whether there was a denial of the process due Cook. There was not.

In addition to the procedural protections against an erroneous status determination described in part IV(1)(b)(ii), the act itself put Cook on notice of his rights and assured, by designating the status hearing to be a "critical stage" of the proceeding, § 29-2915, that Cook was represented by counsel, *State v. True, ante* p. 274, 460 N.W.2d 668 (1990). Moreover, the very matter Cook wished to call to the trial judge's attention, O'Sullivan's disagreement with certain of Balters' testing methods, was made known to the trial judge.

### 2. DETERMINATION OF STATUS

We thus reach the second and last assignment of error, which challenges the trial judge's determination of Cook's status as a treatable mentally disordered sex offender. Whether a convicted sex offender is mentally disordered and treatable is a question of fact, *State v. Todd, supra,* and, as such, the determination will not be disturbed absent an abuse of discretion, *State v. Reddick,* 221 Neb. 322, 376 N.W.2d 797

(1985).

The trial judge was presented with two written reports stating that Cook was a mentally disordered sex offender and two written reports stating that he was not. At least one expert opined that Cook's condition is treatable. Since the opinion of any given expert witness is not binding on the trier of fact, *Way v. Hendricks Sodding & Landscaping, Inc., ante* p. 519, 462 N.W.2d 99 (1990), the trial judge was not obligated to accept the opinion of either Sturgis or O'Sullivan. Inasmuch as the combined opinions of Moore and Balters support the trial judge's finding that Cook is a treatable mentally disordered sex offender, it cannot be said the determination constitutes an abuse of discretion.

## V. DECISION

The record failing to support either of Cook's assigned errors, we affirm.

AFFIRMED.

WHITE, J., concurs in the result.