STATE OF NEBRASKA, APPELLEE, V. MARK E. BAKER, APPELLANT.

511 N.W.2d 757

Filed February 4, 1994.   No. S-93-488.

R. Bradley Dawson, of Clough, Dawson & Piccolo, and Patrick B. Hays for appellant.

Kent D. Turnbull, Lincoln County Attorney, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

LANPHIER, J.

Defendant-appellant, Mark E. Baker, was charged with first degree murder. Subsequently, his counsel, after meeting with appellant, determined there were doubts as to appellant's competency to stand trial. A competency hearing was held prior to the preliminary hearing, and appellant was determined to be incompetent to stand trial.

After a subsequent hearing to determine treatment, the district court ordered that appellant be treated with antipsychotic drugs under specific conditions with a view to render appellant competent to stand trial. Appellant appeals the order of the district court requiring him to undergo involuntary treatment. We affirm the order of the district court.

## FACTS

After appellant was charged with first degree murder, appellant's counsel filed a motion to determine competency of appellant. On June 2, 1992, the district court entered an order requiring a competency evaluation of appellant. After the order was entered, the district court was advised that appellant would not cooperate with the evaluation.

On August 5, 1992, the district court, upon its own motion, found that appellant would not cooperate with the evaluation. It ordered the evaluation to proceed. The evaluator was instructed to give the district court his or her best opinion based on the information available about appellant. The evaluation was conducted by Dr. Louis C. Martin, a psychiatrist working at the Lincoln Regional Center.

On November 30, 1992, a hearing was held to determine

whether appellant was competent to stand trial. Appellant's evaluation was admitted into evidence without objection. The evaluation found that appellant was incompetent to stand trial because he suffered from "Schizophrenia, Paranoid Type, chronic, with acute exacerbation." The district court found appellant incompetent to stand trial. The district court then granted the State's motion to bifurcate the proceedings to determine the treatment for appellant.

On February 24, 1993, at the hearing to determine treatment, Dr. Martin testified that appellant was amenable to treatment involving antipsychotic drugs. Dr. Martin also stated that appellant would not improve without the use of the medication, that there were no less restrictive alternatives, that appellant would not otherwise be able to communicate with his attorney, and that appellant had responded to this medication in previous treatments.

On May 3, 1993, the district court ordered appellant to undergo treatment, such treatment to be administered only if the treatment could comply with certain safeguards issued by the court.

On appeal, appellant claims the district court erred in allowing the testimony of Dr. Martin because the State failed to provide proper and sufficient foundation for the doctor's opinion. Appellant's remaining assignments of error combine to assert that the order requiring him to undergo treatment with antipsychotic medication violated his due process rights.

## PSYCHIATRIC TESTIMONY

Appellant claims that Dr. Martin's testimony was improperly admitted because it lacked sufficient foundation. In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in admissibility of evidence. *State v. White*, 244 Neb. 577, 508 N.W.2d 554 (1993); *State v. Timmerman*, 240 Neb. 74, 480 N.W.2d 411 (1992).

The State argues that appellant did not properly raise the issue during the hearing to determine treatment because only a

general foundational objection was made to Dr. Martin's testimony regarding appellant's condition. "If a general objection on the basis of insufficient foundation is overruled, the objecting party may not complain on appeal unless (1) the ground for exclusion was obvious without stating it or (2) the evidence was not admissible for any purpose." *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 867, 468 N.W.2d 105, 114 (1991). However, after appellant's objection to Dr. Martin's testimony was overruled, defense counsel stated: "There has been no proper foundation laid for this opinion. We don't know when Dr. Martin met with Mr. Baker this morning; we don't know the conditions of the visit or anything of that nature."

This statement was sufficient to raise the question of sufficiency of foundation for Dr. Martin's opinion on the course of treatment for appellant.

Although the issue was properly preserved for appellate review, appellant's assignment of error is without merit. Foundation for Dr. Martin's testimony was sufficiently laid. Appellant claims that because the record is devoid of any dates, times, or duration of the contact between Dr. Martin and appellant, insufficient foundation was laid to support Dr. Martin's testimony regarding treatment. Appellant has overlooked Dr. Martin's forensic evaluation of appellant. In addition to interviewing appellant, Dr. Martin used several sources which provided information on appellant's earlier life history and previous psychiatric history. The evaluation contained a section listing the results of the mental status examination and stated the psychiatric conclusions based on the entire data reviewed by Dr. Martin.

Furthermore, on the day of the hearing, Dr. Martin once again spoke to appellant. Dr. Martin stated that he did not see anything that would change his earlier diagnoses. He also stated that it was highly unlikely to see improvement in a patient suffering from the same condition as appellant, without medication. He also testified that appellant's history indicated that he responded well to medication for treatment of his mental condition. On these facts, we find there was sufficient foundation laid to admit the testimony of Dr. Martin.

## INVOLUNTARY TREATMENT

Appellant also claims that the district court's order denied him due process by improperly ordering him to undergo involuntary treatment with antipsychotic medication. When an individual claims he is being deprived of a liberty interest without due process, the claim is examined in three stages. First, a determination must be made that there is a liberty interest at stake. In the second stage, the court must determine what procedural safeguards are required. Finally, the facts of the case are examined to ascertain whether there was a denial of that process which was due. See *Washington v. Harper*, 494 U.S. 210, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990). See, also, *State v. Cook*, 236 Neb. 636, 463 N.W.2d 573 (1990).

### LIBERTY INTEREST

In two recent U.S. Supreme Court cases, the Court acknowledged that individuals, whether they are convicted prisoners or pretrial detainees, have a protectable liberty interest in avoiding unwanted medication with antipsychotic drugs. See, *Riggins v. Nevada*, \_\_\_\_ U.S. \_\_\_\_, 112 S. Ct. 1810, 118 L. Ed. 2d 479 (1992); *Washington v. Harper, supra*.

### PROCEDURAL PROTECTIONS REQUIRED

We now turn to the second stage of the analysis, which requires a determination of what procedural protections are required.

The Supreme Court addressed this question in *Washington v. Harper, supra. Harper* involved an inmate who refused to take prescribed antipsychotic drugs. Pursuant to a policy of the department, his treating physician sought to medicate the defendant over his objections. Applying a reasonableness standard, the Supreme Court stated that the policy comported with the Due Process Clause because the standards it set forth recognized the prisoner's medical interests and the State's interests. "[G]iven the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.*, 494 U.S. at 227.

The subsequent case of *Riggins v. Nevada, supra,* addressed the issue of involuntary medical treatment of pretrial detainees. The court in *Riggins* held that a pretrial detainee has an interest in avoiding involuntary administration of antipsychotic drugs that is protected under the Due Process Clause. See *Bell v. Wolfish,* 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). In *Riggins,* the Court held that under *Harper,* due process is satisfied in connection with the administration of antipsychotic drugs to defendants during trial if the medication was medically appropriate and, considering less intrusive means, essential for the sake of defendants' own safety or the safety of others.

### APPLICATION OF PROCEDURAL REQUIREMENTS

The evidence presented at the hearing satisfies the Due Process Clause requirements set forth in *Harper* and *Riggins.* A forensic evaluation was made by Dr. Martin on October 19, 1992. In it, Dr. Martin stated that appellant suffered from "Schizophrenia, Paranoid Type, in exacerbation." The evaluation also stated that appellant was dangerous. Although 4 months had passed since Dr. Martin made his evaluation, the doctor stated at the hearing on February 24, 1993, that typically, people in appellant's condition do not improve without medication. At that hearing, Dr. Martin stated he had seen appellant in the morning, and his diagnosis, as stated in the evaluation, had not changed.

The use of medication was also medically appropriate. Dr. Martin testified that appellant would be amenable to treatment with antipsychotic drugs. Dr. Martin also stated that although there are side effects to the antipsychotic drugs, their use on the whole was safe, since the incidence of serious side effects from the medication is small and those drugs with a high incidence of side effects could be controlled by the dosage administered. In addition, Dr. Martin stated that appellant had responded well to antipsychotic medication in the past. Dr. Martin testified that the fact that appellant had been treated with the antipsychotic medication in the past was the best prognosticator of whether the drug would work in the future.

In regard to the least restrictive alternatives, Dr. Martin stated that although other therapeutic approaches were

available, the likelihood that they would improve appellant's condition was not very high.

## SAFEGUARDS

The above facts alone establish that appellant was afforded the protections of the Due Process Clause under *Harper* and *Riggins*. However, the trial court made it clear that it was very reluctant to order the involuntary treatment. The order stated:

> Antipsychotic medications alter that mysterious area of existence that we call being. These medications have the potential to fundamentally change the thought pattern and behavioral pattern of the individual to whom they are administered. It is impossible to say whether the true individual is the one presenting the symptomatology described as psychosis, or the individual that is manifested after the treatment of psychosis. The very essence of humanity, the foundation of individuality is potentially affected by the administration of antipsychotic drugs.

This reluctance prompted the trial court to issue several safeguards to restrict the intrusion to appellant's liberty to a minimum. The safeguards included provisions which ordered that the treatment be discontinued in the event any side effects became apparent, that the dosage be kept to a minimum, and that the medication only be administered with the goal of removing the psychosis, not sedating appellant. The trial court also permitted appellant to request any additional appropriate safeguards within 5 days of the order. The record does not reflect that such requests were made by appellant. Given these precautions, it is evident that the lower court properly ordered the involuntary treatment.

## TREATMENT FOR TRIAL

Appellant argues that if he is found to be mentally ill and a danger to others, then civil commitment is appropriate, rather than involuntary treatment with antipsychotic medications to render him competent for trial. However, the Supreme Court in *Riggins v. Nevada*, \_\_\_\_ U.S. \_\_\_\_, 112 S. Ct. 1810, 1815, 118 L. Ed. 2d 479 (1992), also offered an alternative theory under which the State "might [be] able to justify" administering medication to an unwilling pretrial detainee. Treatment might

be justifiable if the treatment was medically appropriate, and if the State could establish that "it could not obtain an adjudication of Riggins' guilt or innocence by using less intrusive means. *Id*. "Constitutional power to bring an accused to trial is fundamental to a scheme of 'ordered liberty' and prerequisite to social justice and peace." *Illinois v. Allen*, 397 U.S. 337, 347, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970) (Brennan, J., concurring). Dr. Martin testified that appellant would be unable to cooperate with his attorney in the preparation of his case without treatment with the antipsychotic medication. Under this standard, appellant could be forced to undergo treatment if the State showed that the medication would enable him to stand trial.

We note that Justice Anthony Kennedy, the author of *Washington v. Harper*, 494 U.S. 210, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990), wrote a concurring opinion in *Riggins* where he expressed his concern over permitting the treatment of defendants with antipsychotic drugs for the sole purpose of rendering them competent to stand trial.

> If the State cannot render the defendant competent without involuntary medication, then it must resort to civil commitment, if appropriate, unless the defendant becomes competent through other means. If the defendant cannot be tried without his behavior and demeanor being affected in this substantial way by involuntary treatment, in my view the Constitution requires that society bear this cost in order to preserve the integrity of the trial process.

*Riggins*, 112 S. Ct. at 1820.

Although there may be situations where we might agree with Justice Kennedy that civil commitment would be proper, the present case is not such a situation. The trial court correctly noted that civil commitment was not an appropriate option because appellant was serving a sentence from a prior conviction. The delay caused by waiting for appellant to complete his sentence before beginning civil commitment proceedings would be unreasonable given that treatment with antipsychotic drugs had shown to improve appellant's condition in the past.

## CONCLUSION

The district court correctly admitted the testimony of Dr. Martin. In addition, the evidence demonstrated that appellant was mentally ill and dangerous and that the treatment was necessary for the protection of himself as well as others. Therefore, the district court was correct in ordering the treatment of appellant with antipsychotic drugs. We affirm the judgment of the district court.

AFFIRMED.