Nebraska Supreme Court Online Library
www.nebraska.gov/courts/epub/
01/15/2016 12:05 PM CST

State of Nebraska, appellee, v.
Kelvin L. Smith, appellant.
___ N.W.2d ___

Filed January 15, 2016.     No. S-14-769.

1. **Trial: Evidence: Appeal and Error.** An appellate court reviews a trial court's ruling on authentication for abuse of discretion.
2. **Trial: Witnesses: Testimony: Appeal and Error.** An appellate court reviews a trial court's allowance of leading questions for an abuse of discretion.
3. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.
4. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.
5. **____: ____.** When judicial discretion is not a factor, whether the underlying facts satisfy the legal rules governing the admissibility of such evidence is a question of law, subject to de novo review.
6. **Convictions: Evidence: Appeal and Error.** When reviewing the sufficiency of the evidence to sustain a criminal conviction, it is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
7. **Constitutional Law: Due Process.** The determination of whether the procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law.

8. **Constitutional Law: Criminal Law: Jury Trials.** Whether cumulative error deprived a criminal defendant of his or her Sixth Amendment right to a trial by an impartial jury presents a question of law to be reviewed de novo.

9. **Statutes: Appeal and Error.** Statutory interpretation is a question of law that an appellate court resolves independently of the court below.

10. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

11. **Appeal and Error.** Appellate review is limited to those errors specifically assigned as error in an appeal to a higher appellate court.

12. **Trial: Evidence: Appeal and Error.** An objection on the basis of insufficient foundation is a general objection, which requires the court to engage in interpretation on appeal, rather than be apprised of the real basis for the objection.

13. ____: ____: ____. A party may not normally complain on appeal for an overruled foundation objection unless the grounds for the exclusion are obvious without stating it.

14. **Trial: Evidence.** Whether there is sufficient foundation evidence for the admission of physical evidence must necessarily be determined by the trial court on a case-by-case basis.

15. **Trial: Evidence: Appeal and Error.** A trial court's determination of the admissibility of physical evidence will not ordinarily be overturned except for an abuse of discretion.

16. **Criminal Law: Trial: Witnesses.** A trial court in a criminal case has a large, though not unlimited, discretion in granting or refusing permission to ask a witness a leading question.

17. **Trial: Witnesses: Testimony: Appeal and Error.** An appellate court reviews a trial court's allowance of leading questions for an abuse of discretion.

18. **Trial: Witnesses: Testimony.** The concern with the use of leading questions during direct examination is that a witness already giving favorable testimony to a party may testify to facts suggested to the witness, rather than those personally known by the witness.

19. **Evidence: Proof.** A document is properly authenticated by evidence sufficient to support a finding that the matter in question is what its proponent claims.

20. **Verdicts: Juries: Appeal and Error.** In a harmless error review, an appellate court looks at the evidence upon which the jury rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather,

whether the guilty verdict rendered in the trial was surely unattributable to the error.

21. **Rules of Evidence: Witnesses: Testimony.** To constitute a prior consistent statement for purposes of Neb. Evid. R. 801(4)(a)(ii), Neb. Rev. Stat. § 27-801(4)(a)(ii) (Reissue 2008), the out-of-court statement must be consistent with the in-court testimony recently charged with being fabricated.

22. \_\_\_\_: \_\_\_\_: \_\_\_\_. That witnesses' memories conflict as to when, where, or how statements were made may be relevant to the credibility of the witnesses' testimony, but it is not relevant for purposes of analyzing whether an out-of-court statement is a prior consistent statement under Neb. Evid. R. 801(4)(a)(ii), Neb. Rev. Stat. § 27-801(4)(a)(ii) (Reissue 2008).

23. **Appeal and Error.** For an alleged error to be considered by an appellate court, an appellant must both assign and specifically argue an alleged error.

24. \_\_\_\_. An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it.

25. **Criminal Law: Minors: Sexual Misconduct: Proof: Words and Phrases.** In order to show "erotic nudity" as defined in Neb. Rev. Stat. § 28-1463.02 (Reissue 2008), the State must prove, first, that the depiction at issue displays a human's genitals or human's pubic area or female's breast area, and second, that the depiction was created for the purpose of real or simulated overt sexual gratification or sexual stimulation of one or more of the persons involved.

26. **Criminal Law: Minors: Sexual Misconduct: Photographs.** Determination of whether a defendant took pictures for purposes of real or simulated overt sexual gratification or sexual stimulation should include consideration of whether (1) the focal point of the visual depiction is on a child's genitalia or pubic area; (2) the setting of the visual depiction is sexually suggestive; (3) the child is depicted in an unnatural pose or in an inappropriate attire, considering the age of the child; (4) the child is clothed; (5) the visual depiction suggests sexual coyness or willingness to engage in sexual activity; and (6) the visual depiction is intended or designed to elicit sexual response in the viewer.

27. \_\_\_\_: \_\_\_\_: \_\_\_\_: \_\_\_\_. In prosecutions under the Child Pornography Prevention Act, the sexual nature of a photograph is not determined solely from the subject of the photograph, but from the motives of the persons generating it.

28. \_\_\_\_: \_\_\_\_: \_\_\_\_: \_\_\_\_. A defendant can be found guilty of creating or possessing child pornography beyond a reasonable doubt even when the actual depiction at issue is unavailable at trial.

29. **Circumstantial Evidence.** Circumstantial evidence is not inherently less probative than direct evidence.

30. **Criminal Law: Sexual Misconduct: Photographs.** Whether a photograph was created for the purpose of sexual gratification or stimulation must be determined, not only from the depiction, but from the motive of the persons generating it.

31. **Criminal Law: Sexual Misconduct: Circumstantial Evidence: Photographs: Intent.** A trier of fact may consider circumstantial evidence of a defendant's intent in determining whether a depiction was created for overt sexual gratification or sexual stimulation.

32. **Trial: Evidence: Prosecuting Attorneys: Due Process.** The nondisclosure by the prosecution of material evidence favorable to the defendant, requested by the defendant, violates due process, irrespective of the good faith or bad faith of the prosecution. But due process is not violated where the evidence is disclosed during trial.

33. **Criminal Law: Motions for Continuance: Evidence: Waiver.** If a continuance would have been a sufficient remedy for a belated disclosure in violation of Neb. Rev. Stat. § 29-1912 (Reissue 2008), a defendant who fails to request a continuance waives any rights he or she may have had pursuant to § 29-1912.

34. **Criminal Law: Prosecuting Attorneys: Witnesses: Indictments and Informations: Time.** Neb. Rev. Stat. § 29-1602 (Reissue 2008) generally requires the prosecution to endorse the names of all known witnesses in the information at the time it is filed, but permits the endorsement of additional witnesses up to and including 30 days prior to trial.

35. **Trial: Witnesses: Indictments and Informations: Time.** A trial court, in the exercise of its discretion, may permit additional witnesses to be endorsed within the 30 days before trial and even after the trial has begun, provided doing so does not prejudice the rights of the defendant.

36. **Trial: Expert Witnesses.** The trial court acts as a gatekeeper to ensure the evidentiary relevance and reliability of an expert's opinion.

37. **Trial: Waiver: Appeal and Error.** Failure to make a timely objection waives the right to assert prejudicial error on appeal.

38. **Motions for Mistrial: Prosecuting Attorneys: Waiver: Appeal and Error.** A party who fails to make a timely motion for mistrial based on prosecutorial misconduct waives the right to assert on appeal that the court erred in not declaring a mistrial due to such prosecutorial misconduct.

39. **Statutes: Intent.** In construing a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the

purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.

40. **Criminal Law: Sexual Assault: Minors: Records: Proof.** For purposes of Neb. Rev. Stat. §§ 28-319.01 (Cum. Supp. 2014) and 28-320.01 (Reissue 2008), a duly authenticated copy of the former judgment and commitment, from any court in which such judgment and commitment was had, for any of such crimes formerly committed by the party so charged, shall be competent and prima facie evidence of such former judgment and commitment.

41. **Rules of Evidence: Records: Proof.** Copies of judicial records that are certified by a deputy clerk for the clerk of the district court and impressed with the court's seal do not require extrinsic evidence of authenticity for admission under Neb. Evid. R. 902, Neb. Rev. Stat. § 27-902 (Reissue 2008).

Appeal from the District Court for Sarpy County: David K. Arterburn, Judge. Affirmed and remanded for resentencing.

Thomas P. Strigenz, Sarpy County Public Defender, and April L. O'Loughlin for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Wright, Connolly, McCormack, Miller-Lerman, Cassel, and Stacy, JJ.

McCormack, J.
## I. NATURE OF CASE
Kelvin L. Smith was convicted in a jury trial of two counts of first degree sexual assault of a child; three counts of third degree sexual assault of a child; three counts of incest; three counts of visual depiction of sexually explicit conduct; and one count of child abuse. Three of the sexual assault charges were charged as second offenses, which, pursuant to Neb. Rev. Stat. § 28-319.01(3) (Cum. Supp. 2014), enhanced Smith's penalty to a mandatory minimum sentence of 25 years in prison. In total, Smith was sentenced to 41 to 110 years of imprisonment,

35 of those years being "hard" years, for which there is no possibility of parole. Smith appeals both his convictions and sentences, assigning 12 errors.

## II. BACKGROUND

Smith and Jennifer Smith met and began dating in April 2004. In late April or May, Smith moved into Jennifer's apartment in Council Bluffs, Iowa, with Jennifer and her two daughters, S.D. and A.L., who were 9 and 6 years old at the time. Smith and Jennifer were married in June 2004. They conceived a son, who was born in September 2010.

On August 6, 2013, Child Protective Services received a child sexual abuse report with regard to S.D., A.L., and the Smiths' son. As a result of the report, a caseworker went to the Smiths' apartment to interview each family member. Based on disclosures made by A.L., the case was turned over to a detective. On August 12, the detective questioned Smith, and then placed him under arrest. On October 22, Smith was formally charged with offenses of which he was later convicted.

S.D. and A.L. both testified at Smith's trial that Smith sexually assaulted them. Although they could not testify to the exact dates for each of the alleged incidents, the girls described their experiences in terms of where they were living at the time. Thus, it becomes relevant that the family moved to La Vista, Nebraska, in 2005 and to Bellevue, Nebraska, in 2007.

### 1. S.D.

At trial, S.D., then 19 years old, testified that Smith began sexually assaulting her when she was 10 years old and the family was living in La Vista. She testified that the first incident occurred one day while her mother and sister were gone. Smith called S.D. into his bedroom, grabbed her by the wrist and took her clothes off despite her asking him to stop. S.D. testified that Smith pulled her down to the bed, pulled down his pants, got on top of her, spread her legs open, and put his penis inside her. S.D. testified that incidents like the one she

described occurred multiple times a month while they lived in La Vista. S.D. said she never told her mother because Smith told her not to and told her that it would upset her mother.

S.D. testified that the sexual assaults began to occur more frequently after the family moved to Bellevue in 2007. She testified that a couple of times a week, Smith would touch her inappropriately or force her to have oral sex or intercourse with him.

When S.D. was 12 or 13 years old, she began to go through puberty and began to grow pubic hair. At trial, S.D. testified that Smith told her she needed to start shaving because he did not like her having hair on her pubic area. She said Smith showed her how to shave; he used a razor on her legs and pubic area without soap or other lubricant and cut her. Although S.D. admitted she sometimes cut her wrists on purpose, S.D. testified that on another occasion, Smith had cut her on the inside of her thighs with a box cutter blade because she did not shave and was "disgusting and ugly." At trial, Dr. Suzanne Haney discussed photographs of S.D.'s thighs, which show scarring consistent with small lacerations that have healed.

### (a) Photographs

At trial, S.D. testified that Smith took nude photographs of her on multiple occasions. At trial, S.D. was able to recall specific details about an incident that occurred when she was 13 years old. When asked to describe that incident, S.D. said:

He took off my clothes and put me on the bed . . . .

. . . .

[He] grabbed hold of my knees and put them in the air and took a picture [of my vaginal area].

. . . .

. . . There was another one where I was — I was on my hands and knees, and I remember he put his hand on the — on my back and pushed my butt up in the air and took a picture like that.

. . . .

. . . There was two more. The other one was — I was on my back, and it was from my neck down.

. . . .

. . . I can't remember the fourth one.

S.D. testified that she saw the pictures after they were taken. She said that the photograph Smith took of her buttocks showed her vaginal area. S.D. testified that Smith placed the photographs into his photograph album (photo album), where there were also nude photographs of S.D.'s mother.

A detective, Sarah Spizzirri, obtained Smith's photo album from Jennifer after Smith's arrest. At the time Spizzirri obtained the album, it did not contain any photographs of S.D. Instead, there was an empty page where the photographs in question were alleged to have been placed.

Smith's photo album was the kind with peel-back-and-stick contact sheets. At trial, Spizzirri testified about those types of photo albums, and Smith objected on form and foundation grounds throughout that testimony. Spizzirri said she was old enough to remember those types of photo albums and described how to insert a photograph into them. Spizzirri was allowed to testify that a contact sheet that has never been lifted is smooth and one that has been lifted is "all bubbled." When the State asked Spizzirri whether a blank page of Smith's photo album, where explicit photographs of S.D. had allegedly been, was bubbled and appeared to have been used, Smith objected again, and the court, believing the testimony had already been adduced, sustained Smith's objection on the grounds that the question had been asked and answered.

### (b) Prior Consistent Statements

S.D. testified that Smith had stopped sexually assaulting her in 2008 when she started dating her first boyfriend, Collin Ryan, whom she dated on and off for 4 years. S.D. testified that one day, while she was babysitting with Ryan, she told Ryan that Smith had touched her.

S.D. also testified that she had expressed to her best friend, Kendra Dick, that she was being sexually assaulted. S.D.

testified that she wrote a poem about it in a notebook that she shared with Dick, sometime around their sophomore year of high school. Without any hearsay objections from Smith, S.D. explained that the poem "was about [her] being afraid to be alone; and [she] was afraid that if [she] was alone, then he would do it again to [her]," and that the poem "talked about [her] hurting because someone kept hurting [her]."

S.D.'s testimony was partly corroborated by Ryan's and Dick's statements at trial. Ryan testified that in December 2008, he drove S.D. home after a date, and that as he was backing up to leave, S.D. came running back outside. Ryan said that he went up to her to see what was wrong and that S.D. started crying. Over Smith's hearsay objections, Ryan testified that S.D. told him that she could not be there anymore, because "he" touches her. Ryan said he understood it to be Smith who was touching S.D., since no other males lived in the house.

Dick testified that in junior high, she and S.D. had a secret notebook in which they would write notes to each other and pass back and forth between classes. Dick testified that S.D. wrote a poem in the notebook, but Smith's hearsay objections were sustained, and Dick was not allowed to testify to the specific contents of the poem. Rather, Dick was allowed to testify that the poem was significant to her and caused her to feel scared for S.D. because "something wasn't right." When asked if Dick's understanding was that the poem was about Smith's raping S.D., Dick answered yes. Smith then objected on hearsay grounds, and that objection was overruled.

## 2. A.L.

A.L., who was 16 years old at the time of trial, testified that Smith began sexually assaulting her when she was 11 years old. She testified that the first time such an incident occurred, Smith came to her room at night and lay on her bed. A.L. testified that Smith took her pants and his clothes off, opened her legs, and put his penis inside her for what "felt like a long time." A.L. testified that about a month

later, Smith came to her room again, put his fingers inside her, and performed oral sex on her. She testified that Smith penetrated her with his penis only that one time, but that Smith continued to penetrate her with his fingers every other night for about a year. A.L. testified that Smith stopped sexually assaulting her sometime after she started her period and Jennifer became pregnant.

### (a) Prior Consistent Statement

Although A.L. did not tell her mother about Smith's sexually assaulting her, A.L. testified that she wrote a letter she hoped her mother would find and kept it in a box in her closet. When asked at trial what the letter was about, A.L. said she wrote about the time Smith penetrated her with his penis and how scared she was. A.L. said that at the end of the letter, she wrote, "[I]f this is my mom finding this, I'm sorry I didn't tell you."

A.L. testified that sometime after Smith stopped sexually assaulting her, she showed the letter to her friend, Natalie James. A.L. said that James came over on a day when A.L. was home by herself, and that A.L. went to her room, got the note, and gave it to James. She testified that James read it and cried. Smith did not object to any of A.L.'s statements about the letter or what she told James.

To corroborate A.L.'s testimony, the State called James to testify regarding the letter. James testified that rather than A.L.'s giving the letter to James, A.L. read the letter to James. Over Smith's hearsay objections, James said the letter told the story of how "one night [Smith] came into [A.L.'s] room, laid in her bed, and then he raped her." James did not remember any message at the bottom of the letter.

### (b) Medical Examination
### and Expert Testimony

On the third day of trial, it came to light, through Smith's cross-examination of Spizzirri and Det. Steve Miller, that a medical examination had been performed on A.L. Prior to

that testimony, neither Smith nor the State was aware of the medical examination. Miller, who was assigned to investigate Smith's case, received documentation of the examination from a child advocacy center and placed it in his personal file; he testified that he mistakenly failed to submit the documentation to the records division, where it would have become part of the official case file.

The parties stipulated that documentation of A.L.'s medical examination would be received into evidence without objection. The documentation, entered into evidence as exhibit 25, reflected that A.L.'s hymen had "a continuous hymenal border with a redundant hymenal surface," meaning there was no disruption in the border or evidence of trauma on A.L.'s hymen. Neither party requested a continuance based on the surprise caused by the exhibit.

Prior to trial, the State was unaware of A.L.'s medical examination, and thus did not disclose to Smith that it intended to elicit expert testimony from Haney about the examination or about the hymen's ability to heal. Before trial, the State expected that Haney would testify only about the photographs she took of the scars on S.D.'s thighs. At trial, however, Haney testified, not only about the scars on S.D.'s thighs, but also that the hymen is able to heal after penile or digital penetration. She testified that a physician cannot tell whether a woman or female child is a virgin based on the presence or absence of a hymen and that the fact exhibit 25 showed A.L. had a normal genital examination did not discount her sexual abuse disclosure.

Smith allegedly "had to scramble within 12 hours to find an expert of his own to counter . . . Haney's surprise opinion."[1] Smith called Dr. Sean McFadden, a medical doctor certified in obstetrics and gynecology who did not have any recent experience treating victims of sexual abuse. At trial, McFadden often provided lengthy and highly technical answers not necessarily responsive to questions asked.

---

[1] Brief for appellant at 33.

From what can be gleaned from McFadden's testimony, his position appears to be that an 11-year-old girl has not yet had an increase in the production of estrogen and that as a result, her hymen is thinner and less elastic than it will be after she goes through puberty. He testified that if an adult male penetrated an 11-year-old girl's vagina, there would likely be some laceration of the hymen, that the damage would be increased if the penetration was forced, and that A.L.'s medical examination was inconsistent with allegations that she was once penetrated by Smith's penis and digitally penetrated every other night for a year.

McFadden testified that he disagreed with Haney's testimony that there would be no medical evidence of tearing of the hymen. He said that, if injured, the hymen's tissue will heal, but it will not go back to its original state; instead, there will be a "transection" where the tissue healed.

### 3. CONVICTION AND SENTENCING

At the conclusion of the trial, the jury found Smith guilty on the charges described above. An enhancement hearing was held, and the State offered, and the court accepted, exhibit 37 into evidence. Exhibit 37 was purported to be a prior conviction of attempted first degree sexual assault. Three of the sexual assault of a child charges were found to be second offenses for purposes of § 28-319.01(3) and Neb. Rev. Stat. § 28-320.01(4) (Reissue 2008), which requires a defendant convicted of sexual assault of a child, who has previously been convicted of a similar sexual offense, to serve a mandatory minimum of 25 years in prison. Prior to announcing the sentences, the trial judge said:

> As I read the case law, with respect to the three charges that carry mandatory minimums, the Court must impose consecutive sentences as to those three charges.
>
> It would seem to the Court, even if that was not required, that that would be appropriate given the time frames.

The Court has chosen to make some of the sentences imposed concurrent to each other and some of the sentences consecutive to each other.

Nothing can be concurrent with the mandatory minimum sentences, . . . but based upon victim, time frame of the offense and nature of the offense, the Court finds that certain sentences should be imposed on a consecutive basis and not a concurrent basis, in addition to the consecutive basis for the sentences on the mandatory minimums.

Smith was ultimately sentenced to 41 to 110 years in prison, 35 of those years being "hard" years, for which there is no good time and no possibility of parole.

Additional facts relevant to our analysis of Smith's assignments of error will be set forth herein.

### III. ASSIGNMENTS OF ERROR

Smith filed a lengthy brief containing many assignments of error which have been consolidated, restated, and renumbered as follows: (1) The trial court erred in allowing exhibits 4 and 6 to be admitted into evidence; (2) the trial court erred in allowing exhibit 9 to be admitted into evidence; (3) the trial court erred in allowing Spizzirri to testify about exhibit 7; (4) the trial court erred in allowing the hearsay testimony of Ryan, Dick, and James; (5) there was insufficient evidence for Smith's convictions; (6) the trial court erred in failing to order a new trial after the medical report on A.L. was not timely disclosed, in violation of *Brady v. Maryland*[2] and the Nebraska discovery rules; (7) the trial court erred in endorsing Haney as a witness and allowing her to testify about exhibit 25; (8) the trial court violated the cumulative error doctrine; (9) the trial court erred in finding Smith's prior conviction was properly authenticated and certified; (10) the trial court erred in sentencing Smith to serve the mandatory minimum sentences

---

[2] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

consecutively; and (11) the trial court erred in imposing excessive sentences.

## IV. STANDARD OF REVIEW

[1] An appellate court reviews a trial court's ruling on authentication for abuse of discretion.[3]

[2] An appellate court reviews a trial court's allowance of leading questions for an abuse of discretion.[4]

[3-5] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[5] Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.[6] When judicial discretion is not a factor, whether the underlying facts satisfy the legal rules governing the admissibility of such evidence is a question of law, subject to de novo review.[7]

[6] When reviewing the sufficiency of the evidence to sustain a criminal conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or reweigh the evidence; such matters are for the finder of fact.[8] The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier

---

[3] *State v. Epp*, 278 Neb. 683, 773 N.W.2d 356 (2009).

[4] *State v. Fleming*, 280 Neb. 967, 792 N.W.2d 147 (2010).

[5] *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008).

[6] *State v. Newman*, 290 Neb. 572, 861 N.W.2d 123 (2015); *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015); *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013); *State v. Merchant*, 285 Neb. 456, 827 N.W.2d 473 (2013); *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012).

[7] *State v. Draganescu, supra* note 5.

[8] See, *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012); *State v. Epp, supra* note 3; *State v. Davis*, 277 Neb. 161, 762 N.W.2d 287 (2009).

of fact could have found the essential elements of the crime beyond a reasonable doubt.[9]

[7] The determination of whether the procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law.[10]

[8] Whether cumulative error deprived a criminal defendant of his or her Sixth Amendment right to a trial by an impartial jury presents a question of law to be reviewed de novo.[11]

[9] Statutory interpretation is a question of law that an appellate court resolves independently of the court below.[12]

[10] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.[13]

## V. ANALYSIS

We affirm all of Smith's convictions as listed above. We remand for resentencing in accordance with this opinion.

### 1. Exhibits 4 and 6

We first address Smith's contention that the trial court erred in allowing exhibits 4 and 6 to be admitted into

---

[9] *State v. Covey*, 290 Neb. 257, 859 N.W.2d 558 (2015); *State v. Nave*, 284 Neb. 477, 821 N.W.2d 723 (2012).

[10] *State v. Norman*, 282 Neb. 990, 808 N.W.2d 48 (2012); *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011); *State v. Boppre*, 280 Neb. 774, 790 N.W.2d 417 (2010); *State v. Goodwin*, 278 Neb. 945, 774 N.W.2d 733 (2009); *State v. Lotter*, 278 Neb. 466, 771 N.W.2d 551 (2009).

[11] See, *State v. Payan*, 277 Neb. 663, 765 N.W.2d 192 (2009); *State v. Clapper*, 273 Neb. 750, 732 N.W.2d 657 (2007).

[12] *State v. Becker*, 282 Neb. 449, 804 N.W.2d 27 (2011).

[13] *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013); *State v. Erickson*, 281 Neb. 31, 793 N.W.2d 155 (2011); *State v. Alford*, 278 Neb. 818, 774 N.W.2d 394 (2009); *State v. Kuehn*, 273 Neb. 219, 728 N.W.2d 589 (2007); *State v. Griffin*, 270 Neb. 578, 705 N.W.2d 51 (2005).

evidence. His argument adds exhibit 5, though it was not assigned as error.

Exhibits 4 through 6 are purported to be photographs of the scars on S.D.'s thighs. The process of authentication for each of the exhibits was similar. The State would start by asking S.D. if she recognized the exhibit, to which S.D. would respond, "[t]hat's me" or "[m]y leg." The State would then ask a leading question to more specifically identify what the photograph portrayed. For example, the State asked S.D., "Is that, particularly, your right leg . . . ?" and "[I]s that a picture of your inner part of your leg?" S.D. affirmed each time. The State then asked whether the exhibit "fairly and accurately reflect the scars from the cutting that [Smith] inflicted on you?" S.D. indicated that each exhibit did. Each time the State offered one of those three exhibits into evidence, Smith objected on form and foundation grounds. Smith's objections were overruled.

[11-13] We need not consider whether the trial court erred in admitting exhibit 5, because appellate review is limited to those errors specifically assigned as error in an appeal to a higher appellate court.[14] With regard to exhibits 4 and 6, Smith offers three reasons why he believes there was not sufficient foundation evidence for the exhibits' admission. But Smith objected to the exhibits' admission only on form and foundation grounds. A foundation objection is a general objection, which requires the court to engage in interpretation on appeal, rather than be apprised of the real basis for the objection.[15] Thus, a party may not normally complain on appeal for an overruled foundation objection unless the grounds for the exclusion are obvious without stating it.[16] Smith acknowledges

---

[14] *State v. Hays*, 253 Neb. 467, 570 N.W.2d 823 (1997).

[15] See *State v. King*, 269 Neb. 326, 693 N.W.2d 250 (2005).

[16] *State v. Hall*, 270 Neb. 669, 708 N.W.2d 209 (2005); *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002); *State v. Baker*, 245 Neb. 153, 511 N.W.2d 757 (1994).

this, but argues that the grounds for the exclusion are obvious from the record.

We acknowledge that in authenticating the exhibits, some of the State's questions were leading questions, which suggested to S.D. the answer desired of her. Thus, we entertain Smith's argument that exhibits 4 and 6 were improperly identified through leading questions and that as a result, there was not sufficient foundation evidence for their admission.

[14,15] Whether there is sufficient foundation evidence for the admission of physical evidence must necessarily be determined by the trial court on a case-by-case basis.[17] A trial court's determination of the admissibility of physical evidence will not ordinarily be overturned except for an abuse of discretion.[18]

[16,17] Our law is well settled that a trial court in a criminal case has a large, though not unlimited, discretion in granting or refusing permission to ask a witness a leading question.[19] We also review a trial court's allowance of leading questions for an abuse of discretion.[20]

[18] We find no abuse of discretion here. The concern with the use of leading questions during direct examination is that a witness already giving favorable testimony to a party may testify to facts suggested to her, rather than those personally known by her.[21] Here, at the time the State first showed S.D. exhibits 4 and 6, S.D. had already testified that Smith had cut her legs. When asked to identify the exhibits, S.D.

---

[17] *State v. Jacobson*, 273 Neb. 289, 728 N.W.2d 613 (2007); *State v. Anglemyer*, 269 Neb. 237, 691 N.W.2d 153 (2005); *State v. Tolliver*, 268 Neb. 920, 689 N.W.2d 567 (2004); *State v. Mather*, 264 Neb. 182, 646 N.W.2d 605 (2002); *State v. Carter*, 255 Neb. 591, 586 N.W.2d 818 (1998).

[18] *State v. Jacobson, supra* note 17.

[19] *State v. Hoffmeyer*, 187 Neb. 701, 193 N.W.2d 760 (1972).

[20] *State v. Fleming, supra* note 4.

[21] Charles W. Ehrhardt & Stephanie J. Young, *Using Leading Questions During Direct Examination*, 23 Fla. St. U. L. Rev. 401 (1995).

immediately responded, "[t]hat's me" or "[m]y leg." The State followed up with leading questions only to more specifically identify the exhibits as photographs of S.D.'s legs showing "the injuries or the scars, from the cutting" that S.D. had just testified Smith had inflicted upon her. We therefore conclude that the trial court did not abuse its discretion in permitting the leading questions used during the State's authentication of exhibits 4 and 6.

[19] A document is properly authenticated by evidence sufficient to support a finding that the matter in question is what its proponent claims.[22] In this case, the State claimed that the exhibits were photographs of S.D.'s legs, and even if we ignore the testimony adduced through the State's leading questions, S.D.'s testimony established that they were in fact photographs of S.D.'s legs. Smith's assignment of error with regard to exhibits 4 and 6 is without merit.

## 2. Exhibit 9

We next address Smith's argument that the court erred in admitting exhibit 9 into evidence. Exhibit 9 is purported to be a copy of Smith's birth certificate issued by the State of Mississippi. The document is signed by a state health officer and certified to be a true and correct copy of the certificate on file with the State of Mississippi. It contains a warning: "A REPRODUCTION OF THIS DOCUMENT RENDERS IT VOID AND INVALID. DO NOT ACCEPT UNLESS EMBOSSED SEAL OF THE MISSISSIPPI STATE BOARD OF HEALTH IS PRESENT." The document contains the seal of Mississippi, as well as a seal of the Mississippi Board of Health. The parties disagree about whether the seal of the Mississippi Board of Health is embossed. In addition to exhibit 9, the State established Smith's birth date and age through two other witnesses.

At trial, Smith objected to exhibit 9's admission on authentication and certification grounds. On appeal, Smith argues that

---

[22] *State v. Jacobson, supra* note 17.

the trial court erred in allowing exhibit 9 into evidence, claiming that the requirements of rule 902[23] were not met.

Rule 901,[24] not cited by Smith, states the general rule that authentication or identification is a condition precedent to admissibility, and that such requirement is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 902 is the "self-authentication" statute; it dictates that documents meeting certain requirements do not require extrinsic evidence of authenticity.

Rule 902(1) provides in relevant part that "[a] document bearing a seal purporting to be that of the United States, or of any state . . . and a signature purporting to be an attestation or execution" does not require extrinsic evidence of authenticity. Exhibit 9 bears a seal purporting to be that of the State of Mississippi and a signature certifying that the information contained in the certificate of live birth is a true and correct copy of the certificate on file with the State of Mississippi.

Smith argues that exhibit 9 does not meet rule 902(1), because the document itself says that it should not be accepted "unless embossed seal of the Mississippi State Board of Health is present," and he claims that the Board of Health seal is not embossed. The State argues that the seal does not need to be embossed, but claims that "a cursory tactile examination of the document shows the [seal is] indeed embossed."[25] We do not make a finding of fact as to whether the seal is embossed, and we do not decide whether the lack of an embossed seal would render the document noncompliant with rule 902(1).

[20] Even if we found that the document was admitted in error, it would be harmless error. In a harmless error review, an appellate court looks at the evidence upon which the jury rested its verdict; the inquiry is not whether in a trial that

---

[23] Neb. Evid. R. 902, Neb. Rev. Stat. § 27-902 (Reissue 2008).

[24] Neb. Evid. R. 901, Neb. Rev. Stat. § 27-901 (Reissue 2008).

[25] Brief for appellee at 23.

occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the guilty verdict rendered in the trial was surely unattributable to the error.[26] The certificate of live birth serves only as proof of the defendant's age. Smith's age, along with the victims' ages, were pertinent to the severity and punishment of Smith's crimes of sexual assault of a child.[27] Evidence of Smith's date of birth was also offered in the form of testimony from at least two witnesses, including Smith's wife. Smith did not object to that testimony and did not present any contradicting testimony. Thus, the jury could have found Smith's age even without exhibit 9. We therefore conclude that any error in admitting exhibit 9 would be harmless error.

### 3. Spizzirri's Testimony on Photo Albums

Smith also argues that Spizzirri's testimony on the photo albums should not have been admitted. First, Smith argues that Spizzirri should not have been allowed to give "opinion testimony" about whether or not a contact sheet on the photo album was "all bubbled" or had been lifted up, because the State did not establish that she was an expert on contact sheets. Second, Smith claims that Spizzirri's testimony was improper bolstering of S.D.'s credibility. Both of these arguments are without merit.

### (a) Opinion Testimony

Rule 701[28] allows a witness not testifying as an expert to provide "those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear

---

[26] *State v. Chavez*, 281 Neb. 99, 793 N.W.2d 347 (2011); *State v. Hudson*, 279 Neb. 6, 775 N.W.2d 429 (2009); *State v. Pischel*, 277 Neb. 412, 762 N.W.2d 595 (2009); *State v. Poe*, 276 Neb. 258, 754 N.W.2d 393 (2008); *State v. Archie*, 273 Neb. 612, 733 N.W.2d 513 (2007).

[27] See Neb. Rev. Stat. § 28-319 (Reissue 2008).

[28] Neb. Evid. R. 701, Neb. Rev. Stat. § 27-701 (Reissue 2008).

understanding of his testimony or the determination of a fact in issue."

Spizzirri testified that she had "personal experience with [that] type of a photo album," with "peeling away the clear sheet" and "putting a photo onto the sticky backing." She testified that in the past, when she "peeled back the clear paper and tried to . . . rearrange or arrange photographs," the clear sheet "never goes down quite right. It's bubbled."

We note that Spizzirri was not actually permitted to testify on direct examination that she believed photographs had been removed from the photo album, though the State's questions certainly created that inference. Even so, such inference was rationally based on Spizzirri's experiences with peel-back-and-stick photo albums, and Spizzirri's testimony was helpful to the jury, who may not have had experience with peel-back-and-stick photo albums. We conclude that Spizzirri's testimony was proper lay witness testimony under rule 701.

### (b) Bolstering

Smith also claims that Spizzirri's testimony regarding the photo album vouched for the character of S.D., in violation of Neb. Evid. R. 608, Neb. Rev. Stat. § 27-608 (Reissue 2008). We do not see, and Smith does not explain, how this statute applies to Spizzirri's testimony.

Rule 608 provides:

> (1) The credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion, but subject to [certain] limitations . . . .
>
> (2) Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in section 27-609, may not be proved by extrinsic evidence.

Subsection (1) does not apply, because the credibility of S.D. was neither attacked nor supported by Spizzirri's testimony in the form of reputation or opinion testimony. Subsection (2) does not apply, because Spizzirri's testimony

about the photo album was not extrinsic evidence of specific instances of S.D.'s conduct.

It seems Smith is construing rule 608 as prohibiting a party from eliciting testimony from one witness to corroborate the testimony of another. There is no such rule. Smith's argument is without merit. We conclude that Spizzirri's testimony about the photo album was properly admitted.

### 4. STATEMENTS BY RYAN, DICK, AND JAMES

Smith argues that the trial court erred in allowing the hearsay testimony of Ryan, Dick, and James as prior consistent statements.

We first note that this issue was properly preserved for appeal by Smith's hearsay objections. The State argues that Smith waived this issue because he did not object on the specific basis that the statements were not prior consistent statements. The State claims that "there are so many components to the hearsay rule, and so many exceptions to it that a generic objection of 'hearsay' does not fit the 'specific grounds' requirement."[29] The State has cherry-picked cases *State v. Cave*[30] and *State v. Duncan*[31] for statements in support of its argument. But those cases did not involve hearsay objections and are easily distinguished.

We have never held that an objecting party must anticipate and specify every hearsay exclusion or exception potentially applicable in order to preserve his or her objection. We conclude that Smith's hearsay objection at trial properly preserved the issue for appeal; thus, we address the merits of Smith's arguments.

First, we review the general hearsay rule and "prior consistent statement" exclusion. Hearsay is "a statement, other

---

[29] Brief for appellee at 8.

[30] *State v. Cave*, 240 Neb. 783, 484 N.W.2d 458 (1992).

[31] *State v. Duncan*, 265 Neb. 406, 657 N.W.2d 620 (2003).

than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted[.]"[32] Hearsay is not admissible at trial except as provided by the Nebraska Evidence Rules.[33]

Rule 801(4)(a)(ii), often referred to as the "prior consistent statement" exclusion, provides that a statement is not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive."

The court explicitly allowed Ryan's testimony of S.D.'s out-of-court statement and James' testimony of A.L.'s out-of-court statement into evidence as prior consistent statements. Dick's statement that she understood the poem to be about rape was not included in that finding. The record does not show under which hearsay exclusion or exception Dick's testimony was allowed, but Smith's hearsay objections were nevertheless overruled.

Smith concedes that S.D. and A.L. were at trial and subject to cross-examination. Smith also concedes that he recently charged S.D. and A.L. with fabricating their allegations against him. Nevertheless, he argues that certain testimony of Ryan, Dick, and James should not have been admissible per rule 801(4)(a)(ii) because it was not consistent with the testimony of S.D. and A.L. at trial.

[21] The main problem with Smith's prior-consistent-statement analysis is that he compares for consistency the testimony of Ryan, Dick, and James with the testimony of S.D. and A.L. regarding the context in which the out-of-court statements were made. Smith should instead compare the out-of-court statements made by S.D. and A.L. with the

[32] Neb. Evid. R. 801(3), Neb. Rev. Stat. § 27-801(3) (Reissue 2008).

[33] Neb. Evid. R. 802, Neb. Rev. Stat. § 27-802 (Reissue 2008).

in-court statements that Smith charged S.D. and A.L. with recently fabricating.[34]

For example, with regard to Ryan's testimony, Smith is distracted by the witnesses' inconsistent testimony about the location and timing of the conversation at issue. Ryan testified that S.D. made the statement "he touches me" after Ryan dropped S.D. off after a date. In contrast, S.D. testified that the conversation occurred while she was babysitting with Ryan. Smith contends this discrepancy makes Ryan's testimony inadmissible.

But applying rule 801(4)(a)(ii), S.D.'s statement to Ryan was not hearsay. S.D. testified at trial and was subject to cross-examination concerning her statement to Ryan, "he touches me." That statement was consistent with S.D.'s testimony at trial and was offered to rebut Smith's charge that S.D. recently fabricated her sexual assault allegations against Smith.

With respect to James' testimony, Smith focuses on James' and A.L.'s conflicting accounts of who read A.L.'s letter. James testified that A.L. read the letter to her, and A.L. testified that James read the letter to herself. But we must compare A.L.'s out-of-court statement contained within the letter with the in-court statement that Smith claims A.L. fabricated. The out-of-court statement was that Smith came into A.L.'s room and raped her, and that statement was consistent with A.L.'s in-court testimony of the same.

[22] The fact that the witnesses' memories conflict as to when, where, or how statements were made may be relevant to the credibility of the witnesses' testimony, but it is not relevant for purposes of analyzing whether an out-of-court statement is a prior consistent statement under rule 801(4)(a)(ii). We conclude that the statements of S.D. and A.L., testified to by

---

[34] See, *State v. Huebner*, 245 Neb. 341, 513 N.W.2d 284 (1994), *abrogated, State v. Morris*, 251 Neb. 23, 554 N.W.2d 627 (1996); *State v. Tlamka*, 244 Neb. 670, 508 N.W.2d 846 (1993), *abrogated, State v. Morris, supra* note 34; *State v. Gregory*, 220 Neb. 778, 371 N.W.2d 754 (1985), *abrogated, State v. Morris, supra* note 34.

Ryan and James respectively, were prior consistent statements properly admitted at trial.

As for Dick's statement that she understood S.D.'s poem to be about Smith's raping S.D., we first acknowledge that such testimony would be hearsay if not for rule 801(4)(a)(ii). In essence, Dick testified to S.D.'s out-of-court written assertion that Smith raped her.

Smith argues that this assertion was not a prior consistent statement, because, he claims, the poem was the declarant, was not produced at trial, and thus was not subject to cross-examination. Smith also makes this argument with respect to A.L.'s letter. Both arguments are without merit.

Rule 801(2) states that a "declarant is a person who makes a statement," and rule 801(1) says that a "statement is (a) an oral or written assertion or (b) nonverbal conduct of a person, if it is intended by him as an assertion." Dick's challenged testimony involves statements contained within the poem. S.D. wrote the poem. As the poem's author, S.D. is clearly the declarant. Likewise, A.L. was clearly the declarant of the statements contained within the letter she wrote. Both S.D. and A.L. were indisputably at trial and subject to cross-examination. Smith's arguments that rule 801(4)(a)(ii) does not apply because the documents were the declarants and not available for cross-examination is without merit.

Smith also argues that Dick's testimony about the poem (that Dick understood it to be about Smith's raping S.D.) was inconsistent with S.D.'s in-court testimony, because S.D. did not use the word "rape" when S.D. described her poem. Instead, S.D. said the poem was very general and was about S.D.'s "hurting because someone kept hurting [her]." Although we think S.D.'s statement to Dick that Smith raped her *is* consistent with S.D.'s statement that someone hurt her, these two statements are not the ones rule 801(4)(a)(ii) requires us to compare.

To comport with rule 801(4)(a)(ii), the out-of-court statement must be consistent with the in-court testimony recently charged with being fabricated. Smith charged S.D. with fabricating

her testimony that Smith sexually assaulted her. S.D.'s out-of-court statement that Smith raped her is consistent with her in-court testimony.

### 5. SUFFICIENCY OF EVIDENCE

[23,24] We turn to Smith's next assignment of error that there was insufficient evidence to sustain the verdict. Smith assigns as error and briefly mentions in his argument that there was insufficient evidence as to all counts. But to be considered by an appellate court, an appellant must both assign and specifically argue an alleged error.[35] An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it.[36] Because Smith's argument addresses only the sufficiency of the evidence with respect to counts 10 through 12, we need only consider the evidence with regard to those charges.

### (a) Counts 10 Through 12

Counts 10 through 12 are charges based on the three photographs that Smith allegedly took of S.D, which S.D. described at trial—one count per photograph. Since the photographs were not available at trial and do not have corresponding exhibit numbers, we will refer to the photographs as photographs "1," "2," and "3" for purposes of our analysis.

[25] All three counts involve charges that Smith violated Neb. Rev. Stat. § 28-1463.03(1) (Reissue 2008), which makes it "unlawful for a person to knowingly make, publish, direct, create, provide, or in any manner generate any visual depiction of sexually explicit conduct which has a child as one of its participants or portrayed observers." Neb. Rev. Stat. § 28-1463.02(5)(e) (Reissue 2008) defines "[s]exually explicit conduct," in relevant part, as "erotic nudity," which means "the

---

[35] *State v. Rodriguez*, 272 Neb. 930, 726 N.W.2d 157 (2007).

[36] *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014); *State v. Pereira*, 284 Neb. 982, 824 N.W.2d 706 (2013); *State v. Mata*, 275 Neb. 1, 745 N.W.2d 229 (2008).

display of the human male or female genitals or pubic area, the human female breasts, or the developing breast area of the human female child, for the purpose of real or simulated overt sexual gratification or sexual stimulation of one or more of the persons involved."[37] This means that in order to show "erotic nudity" as defined in § 28-1463.02, the State must prove, first, that the depiction displayed a human's genitals or a human's pubic area or female's breast area, and second, that the depiction was created for the purpose of real or simulated overt sexual gratification or sexual stimulation.

[26,27] To determine whether photographs were taken for the purpose of real or simulated overt sexual gratification or sexual simulation, we consider the following factors from *United States v. Dost*[38]:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> 4) whether the child is fully or partially clothed, or nude;
>
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

A visual depiction need not involve all these factors to be considered "erotic nudity."[39] Nor are the factors exclusive. We have said that the sexual nature of a photograph is not

---

[37] § 28-1463.02(3).

[38] *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *affirmed sub nom. U.S. v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), and *affirmed* 813 F.2d 1231 (9th Cir. 1987). See, also, *State v. Saulsbury*, 243 Neb. 227, 498 N.W.2d 338 (1993).

[39] See, § 28-1463.02; *United States v. Dost, supra* note 38.

determined solely from the subject of the photograph, but also from the motives of the persons generating it.[40]

### (b) Prosecuting Child Pornography Cases Without Depiction at Issue in Evidence

Smith claims it was impossible for the jury to find beyond a reasonable doubt that the photographs Smith allegedly took of S.D. depicted erotic nudity, because the photographs were "not in existence" at trial.[41] Smith's argument appears to be that, without actual photographs, the jury could not determine whether a minor's private parts were displayed in the photographs and could not apply the *Dost* factors to determine whether they were taken for the purpose of real or simulated overt sexual gratification or sexual simulation.

The State argues in contrast that a defendant can be found guilty of creating or possessing child pornography beyond a reasonable doubt even without the actual depictions in evidence. In support of its position, the State cites three federal cases, all of which rely on *U.S. v. Villard*.[42]

In *Villard*, the defendant filed a motion for judgment of acquittal after a jury convicted him of violating the federal exploitation of children statute, see 18 U.S.C. § 2251 (2012). In the lower court's order granting the motion, it indicated that it may be possible to prove beyond a reasonable doubt that the defendant violated § 2251, even without the actual depiction at issue.[43] Nevertheless, the lower court found that the evidence against the defendant was insufficient to prove that the unavailable photographs at issue were illegal child pornography in violation of § 2251.

---

[40] See *State v. Saulsbury, supra* note 38.

[41] Brief for appellant at 53.

[42] *U.S. v. Villard*, 885 F.2d 117 (3d Cir. 1989).

[43] See *U.S. v. Villard*, 700 F. Supp. 803 (D. N.J. 1988), *affirmed U.S. v. Villard, supra* note 42.

The circumstantial evidence in *Villard* included a surveillance tape, which showed the defendant and another man looking at the depiction at issue and commenting on it. At one point, the other man said to the defendant, "'I wonder if he's asleep. He's three quarters hard. Maybe he sleeps in the buff like that. He's pretty hairy, though, God but not just much under the arm.'"[44] The other man also testified at trial that the pictures were all closeups of a boy who was approximately 14 or 15 years old, which showed the boy from his head to his knees. The man said that the boy's knees were bent slightly upward and that he was "'semi erect.'"[45]

After the jury in *Villard* convicted the defendant based on the evidence above, the lower court granted the defendant's motion for judgment of acquittal. On appeal, the Third Circuit was able to find only two of the *Dost* factors with any certainty.[46] It concluded that the evidence was insufficient and affirmed the district court's grant of judgment of acquittal. One judge dissented, because she felt that more deference should have been given to the jury's determination and that the majority was not viewing the evidence in the light most favorable to the government.

[28,29] We find it clear from the reasoning in *Villard* and similar cases that a defendant can be found guilty of creating or possessing child pornography beyond a reasonable doubt even when the actual depiction at issue is unavailable at trial. After all, we have often said that circumstantial evidence is not inherently less probative than direct evidence.[47] And, although courts have recognized that proving a child

---

[44] *Id.* at 806.

[45] *Id.* at 807.

[46] *U.S. v. Villard, supra* note 42.

[47] *State v. Babbitt*, 277 Neb. 327, 762 N.W.2d 58 (2009); *State v. Leibhart*, 266 Neb. 133, 662 N.W.2d 618 (2003); *State v. Miner*, 265 Neb. 778, 659 N.W.2d 331 (2003); *State v. Nelson*, 262 Neb. 896, 636 N.W.2d 620 (2001); *State v. Castor*, 262 Neb. 423, 632 N.W.2d 298 (2001).

pornography case may be considerably more difficult without the actual depiction,[48] we find no case in which the court says it is impossible. Smith does not cite to any.

### (c) Merits of Smith's Assignment

The question we must answer is whether, viewing the evidence in a light most favorable to the State, any rational trier of fact could have found that Smith created a depiction of "erotic nudity" involving a child, in violation of § 28-1463.02. This requires a two-step analysis.[49] First, we must determine whether any rational trier of fact could have found that the photographs at issue displayed "human male or female genitals or pubic area, the human female breasts, or the developing breast area of the human female child."[50] If so, we proceed to the second step, which is to determine whether a rational trier of fact could have found that the depictions were created "for the purpose of real or simulated overt sexual gratification or sexual stimulation of one or more of the persons involved."[51] To answer this second question, we refer to the factors from *Dost*.

S.D. testified that when she was 13 years old, Smith took off her clothes, put her on the bed, and took photographs of her. For one photograph, Smith grabbed S.D.'s knees, put them in the air, and took a picture of her vaginal area (photograph 1). Another photograph was of S.D. on her hands and knees with her "butt up in the air" (photograph 2). S.D. testified that her vaginal area was visible in photograph 2. S.D. said a third photograph was taken of her from her neck down while she was on her back (photograph 3). S.D. did not say that photograph 3 displayed her vaginal area. S.D. testified that Smith showed

---

[48] See, *U.S. v. Villard, supra* note 42; *People v. Wayman*, 379 Ill. App. 3d 1043, 885 N.E.2d 416, 319 Ill. Dec. 145 (2008).

[49] See *State v. Saulsbury, supra* note 38; § 28-1463.02.

[50] § 28-1463.02(3).

[51] *Id.*

her the photographs and that the photographs reflected what she had described Smith took of her.

### (i) Display of Private Area

Based on S.D.'s testimony, we conclude that a rational trier of fact could find that the photographs displayed S.D.'s genital area. S.D. testified as to the contents of the photographs. With respect to photographs 1 and 2, S.D. testified that they displayed her vaginal area.

Although S.D. did not specifically describe the individual body parts depicted in photograph 3 the way she did with respect to photographs 1 and 2, we conclude that a rational jury could infer from S.D.'s testimony that at least her breasts, and possibly her genitals or pubic area, were depicted in photograph 3. This reasonable inference is supported by S.D.'s testimony that Smith took off her clothes and took a photograph of her from her neck down; that at the time Smith took the photographs of S.D., he had a history of sexually assaulting her and continued to do so after the photographs were taken; and that Smith placed the photograph into his photo album alongside sexually explicit photographs of S.D.'s mother.

### (ii) Purpose of Sexual Stimulation
### or Gratification

We also conclude that a rational trier of fact could find that the photographs were created for the purpose of sexual gratification or sexual stimulation.

[30,31] We consider the *Dost* factors outlined above, which are primarily helpful in determining from the depiction whether it was created for sexual gratification or sexual stimulation. But we have also held that whether the photograph was created for the purpose of sexual gratification or stimulation must be determined, not only from the depiction, but from the motive of the persons generating it.[52] Thus, a trier of fact may consider circumstantial evidence of a defendant's intent in determining

---

[52] See *State v. Saulsbury, supra* note 38.

whether a depiction was created for overt sexual gratification or sexual stimulation.[53]

For example, the jury could consider the context in which the photographs were alleged to have been taken.[54] Here, Smith took the photographs during the time he was forcing S.D. to have sexual intercourse and oral sex with him. The jury may have also considered S.D.'s testimony that Smith placed S.D.'s photographs in the photo album along with nude photographs of Jennifer, which Smith described as "adult-oriented pictures."

Additionally, the photographs meet many of the *Dost* factors. Photographs 1 and 2 meet, at least, factors 2 through 4 and 6. Both photographs were taken while S.D. was lying on the bed, a place generally associated with sexual activity.[55] S.D.'s attire and poses in those photographs were unnatural for a 13-year-old girl and suggest a willingness to engage in sexual activity. S.D. was nude and on her hands and knees with her "butt up in the air" in one photograph, and on her back with her knees up in the air in the other. And, based on the context of Smith's repeated sexual assaults, the photograph was clearly designed to elicit a sexual response in the viewer, Smith. Photograph 3 meets, at least, *Dost* factors 4 and 6. The photograph depicted S.D. nude and was intended to elicit a sexual response in Smith.

Viewing the evidence in the light most favorable to the State, we conclude that a rational jury could find beyond a reasonable doubt that Smith took the photographs for the purpose of his own overt sexual gratification or sexual stimulation in violation of § 28-1463.03. Finding both parts of the "erotic nudity" analysis met, we affirm Smith's convictions on counts 10 through 12.

---

[53] *Id.*

[54] See *id.* See, also, *U.S. v. Rivera*, 546 F.3d 245 (2d Cir. 2008); *U.S. v. Vanderwal*, 533 Fed. Appx. 498 (6th Cir. 2013).

[55] See *United States v. Dost, supra* note 38.

### 6. *BRADY v. MARYLAND* AND NEB. REV. STAT. § 29-1912 (CUM. SUPP. 2014)

Next, Smith asserts that the trial court erred in failing to order a new trial, as to all counts, after the medical report on A.L. was not timely disclosed, which Smith alleges was in violation of *Brady v. Maryland*[56] and the Nebraska discovery rules.

[32] Under *Brady*, the nondisclosure by the prosecution of material evidence favorable to the defendant, requested by the defendant, violates due process, irrespective of the good faith or bad faith of the prosecution.[57] But *Brady* is not violated where the evidence is disclosed during trial.[58] Here, the parties became aware of the medical examination on the third day of trial. Because the medical examination was disclosed during the trial, we conclude that Smith's right to due process was not violated by the timing of the disclosure.

[33] However, our review is not complete. In Nebraska, discovery in criminal cases is also governed by statute, and we have said that § 29-1912 exacts more than the constitutional minimum.[59] Nevertheless, if a continuance would have been a sufficient remedy for a belated disclosure in violation of § 29-1912, a defendant who fails to request a continuance waives any rights he or she may have had pursuant to § 29-1912.[60]

We do not determine whether the timing of the disclosure here violated § 29-1912, because we find that Smith waived his rights under that statute when he failed to request a

---

[56] *Brady v. Maryland, supra* note 2.

[57] *Id.*

[58] *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified on denial of rehearing* 255 Neb. 889, 587 N.W.2d 673 (1999) (citing *U.S. v. Gonzales*, 90 F.3d 1363 (8th Cir. 1996)).

[59] *State v. Lotter, supra* note 58; *State v. Kula*, 252 Neb. 471, 562 N.W.2d 717 (1997).

[60] See *State v. Lotter, supra* note 58.

continuance. Smith's main complaint is that, had exhibit 25 been disclosed sooner, Smith "would have been able to better prepare for the cross examinations of both [A.L.] and . . . Haney as well as aid in the preparation of . . . McFadden."[61] Because a continuance would have cured the prejudice Smith alleges and Smith failed to request a continuance, we conclude that he waived any rights he may have had pursuant to § 29-1912.

### 7. Haney's Testimony Regarding Exhibit 25

Smith makes several arguments that Haney's testimony about exhibit 25 should not have been admitted. But his arguments overlap and are scattered. Thus, in this section, we address Smith's complaints about Haney as we understand them, to the extent such issue has not already been addressed.

### (a) Haney's Endorsement

One of Smith's complaints is that the trial court erred in endorsing Haney as a witness 3 months before the trial began. On February 24, 2014, the State moved to endorse additional witnesses, including Haney. On March 3, a hearing was held, and Smith's counsel objected to the State's motion on the grounds that it was the State's sixth change to the complaint, trial was scheduled to occur on March 18, and Smith's counsel did not know in what capacity Haney would be testifying. The court granted the State's motion, requiring the State to submit an affidavit documenting discovery materials provided to Smith related to Haney. In its order, the court stated, "[I]f [Smith] needs additional time to conduct further discovery, a continuance may be requested." Smith availed himself of that option and waived his right to a speedy trial. Trial began June 3.

[34,35] Neb. Rev. Stat. § 29-1602 (Reissue 2008) generally requires the prosecution to endorse the names of all known

---

[61] Brief for appellant at 37.

witnesses in the information at the time it is filed, but permits the endorsement of additional witnesses up to and including 30 days prior to trial. Additionally, we have said that a trial court, in the exercise of its discretion, may permit additional witnesses to be endorsed within the 30 days before trial and even after the trial has begun, provided doing so does not prejudice the rights of the defendant.[62]

The trial court offered and granted Smith a continuance. The trial began on June 3, 2014, which made the State's motion to endorse additional witnesses more than 90 days prior to trial. We conclude that Smith was not prejudiced as a result of the endorsement, and accordingly, the trial court did not err in endorsing Haney.

Smith seems to think that the trial court's endorsement of Haney was somehow related to the sudden emergence of exhibit 25 at trial and somehow caused Haney's unanticipated testimony that exhibit 25 did not exonerate Smith. However, it is clear from the record that exhibit 25 did not come to surface until the third day of trial, because Miller inadvertently kept it in his personal file. Thus, at the time of Haney's endorsement, neither the court nor the State anticipated that Haney would testify about exhibit 25. Smith's argument is without merit.

(b) *Daubert v. Merrell Dow Pharmaceuticals, Inc.*

Smith also claims that the trial court erred in allowing Haney to provide an expert opinion about exhibit 25, because it did not require the articles on which Haney based her opinion to be vetted under the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[63]

[36] Under *Daubert* and *Schafersman v. Agland Coop*,[64] the trial court acts as a gatekeeper to ensure the evidentiary

---

[62] *State v. Mecum*, 225 Neb. 293, 404 N.W.2d 431 (1987).

[63] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

[64] *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001).

relevance and reliability of an expert's opinion. This gatekeeping function entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is valid and whether that reasoning or methodology properly can be applied to the facts in issue.[65]

But to sufficiently call specialized knowledge into question under *Daubert* and *Schafersman* is to object with enough specificity so that the court understands what is being challenged.[66] The initial task falls on the party opposing expert testimony to sufficiently call into question the reliability of some aspect of the anticipated testimony.[67]

Normally, a challenge to the admissibility of evidence under *Daubert* and *Schafersman* should take the form of a concise pretrial motion.[68] But we recognize this was not an option for Smith, because he was not aware prior to trial that Haney would testify about exhibit 25. Nevertheless, we have said that the pretrial motion should identify, in terms of the *Daubert* and *Schafersman* factors, what is believed to be lacking with respect to the validity and reliability of the evidence.[69]

Smith, in his brief on appeal, does not identify any particular factor he deems to be lacking, but asserts only that the trial court did not "determine if the studies were tested [or] if they were valid or if they had general acceptance within the relevant scientific community."[70]

---

[65] *State v. Daly*, 278 Neb. 903, 775 N.W.2d 47 (2009); *State v. Edwards*, 278 Neb. 55, 767 N.W.2d 784 (2009); *State v. Schreiner*, 276 Neb. 393, 754 N.W.2d 742 (2008); *State v. Gutierrez*, 272 Neb. 995, 726 N.W.2d 542 (2007), *abrogated on other grounds, State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010).

[66] *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011).

[67] *Id.*

[68] *State v. McClain*, 285 Neb. 537, 827 N.W.2d 814 (2013).

[69] *Id.*

[70] Brief for appellant at 39.

[37] Moreover, although Smith claims the articles that Haney relied on in forming her opinion should have been subjected to *Daubert* standards, his true grievance concerns Haney's opinion that a normal anal/genital examination neither confirms nor excludes the possibility of sexual abuse. When Haney testified to that opinion at trial, Smith did not object. Failure to make a timely objection waives the right to assert prejudicial error on appeal.[71] We conclude that Smith did not properly preserve this issue for appeal.

### 8. Cumulative Error Doctrine

In *Wamsley v. State*,[72] we recognized the doctrine of cumulative error in the context of a criminal jury trial. We explained that although one or more trial errors might not, standing alone, constitute prejudicial error, their cumulative effect may be to deprive the defendant of his constitutional right to a public trial by an impartial jury.

Smith claims the trial court committed "copious errors including those aforementioned."[73] We have already determined that the errors assigned by Smith are either meritless or inconsequential. Smith did not assign, but adds to his cumulative-error allegations, only that the prosecution improperly gave S.D. "gas money" and improperly met with S.D. two or three times without providing Smith with reports.

[38] But a party who fails to make a timely motion for mistrial based on prosecutorial misconduct waives the right to assert on appeal that the court erred in not declaring a mistrial due to such prosecutorial misconduct.[74] Smith did not make a timely motion for mistrial based on prosecutorial misconduct.

---

[71] *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013); *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012); *State v. Kibbe, supra* note 6.

[72] *Wamsley v. State*, 171 Neb. 197, 106 N.W.2d 22 (1960).

[73] Brief for appellant at 59.

[74] *State v. Stricklin, supra* note 6; *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006); *State v. Lotter, supra* note 58; *State v. Wilson*, 252 Neb. 637, 564 N.W.2d 241 (1997).

We therefore conclude that Smith waived his right to assert that issue on appeal.

Smith's argument that cumulative error deprived him of his right to a fair trial is without merit. Although we avoided the question of whether Smith's birth certificate was properly authenticated, we determined that, regardless of error, its admission would be harmless. We determined that all of Smith's other arguments concerning trial errors are without merit. Thus, there are not multiple trial errors to aggregate.

### 9. Enhancement

We turn lastly to sentencing issues, beginning with Smith's assignment of error that the trial court erred in finding Smith's prior conviction was properly authenticated and certified for purposes of enhancing his sentences.

Smith's sexual assault of a child crimes were charged in the information as enhancements, to the effect that, if a prior similar conviction was proved, Smith would receive enhanced sentences for the sexual assault crimes of which he was convicted. Smith was convicted of three counts of third degree and two counts of first degree sexual assault of a child. At Smith's enhancement hearing, the State offered exhibit 37, which was purported to be Smith's prior conviction for attempted first degree assault. Exhibit 37 contains a signature and certification on the last page.

Smith argues that the trial court erred in finding that exhibit 37 was properly authenticated and certified for purposes of enhancement, taking the position that a seal of authenticity should be on every page of the document.

Smith is correct that neither § 28-319.01 nor § 28-320.01 provides any guidance as to what is required to prove a prior conviction. In contrast, for purposes of the habitual criminal statute, Neb. Rev. Stat. § 29-2222 (Reissue 2008) provides that "a duly authenticated copy of the former judgment and commitment, from any court in which such judgment and commitment was had, for any of such crimes formerly committed

by the party so charged, shall be competent and prima facie evidence of such former judgment and commitment."

[39] In construing a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.[75] We see no reason why the proof required of prior conviction for purposes of §§ 28-319.01 or 28-320.01 should be any different than the proof required under § 29-2222 for the habitual criminal statute.

[40] Accordingly, we hold that for purposes of §§ 28-319.01 and 28-320.01, a duly authenticated copy of the former judgment and commitment, from any court in which such judgment and commitment was had, for any of such crimes formerly committed by the party so charged, shall be competent and prima facie evidence of such former judgment and commitment.

[41] Exhibit 37 is a self-authenticating document. Copies of judicial records that are certified by a deputy clerk for the clerk of the district court and impressed with the court's seal do not require extrinsic evidence of authenticity for admission under rule 902.[76] Exhibit 37 is a copy of Smith's record concerning his attempted first degree sexual assault conviction. It is certified by a deputy clerk for the Douglas County District Court and bears the court's seal. Page 10, which is the order sentencing Smith for his conviction of attempted first degree sexual assault, is file stamped and separately authenticated by the clerk of the court. We conclude that exhibit 37 was a self-authenticating document, which was prima facie evidence of Smith's previous attempted first degree assault conviction. Therefore, Smith's argument is without merit.

---

[75] *State v. Rathjen*, 266 Neb. 62, 662 N.W.2d 591 (2003).

[76] § 27-902; *State v. Hall, supra* note 16.

## 10. Sentences

Smith argues that his case should be remanded for new sentencing because the trial court abused its discretion in imposing Smith's sentences, which were based on the court's erroneous impression that the counts with mandatory minimum sentences needed to be consecutive to all other counts.

Smith is correct that his sentencing was imposed by the trial court under a mistake of law. In imposing Smith's sentences, the trial judge said that he understood the case law to require him to impose the sentences carrying mandatory minimum sentences consecutively to the sentences for the other counts. It appears the trial court relied on a statement in *State v. Castillas*[77]: "Mandatory minimum sentences cannot be served concurrently. A defendant convicted of multiple counts each carrying a mandatory minimum sentence must serve the sentence on each count consecutively." We clarified this statement in *State v. Berney*,[78] when we said:

> We were not speaking of enhancements under the habitual criminal statute, but of those specific crimes that required a mandatory minimum sentence to be served consecutively to other sentences imposed.
>
> There is a distinction between a conviction for a crime that requires both a mandatory minimum sentence and mandates consecutive sentences, and the enhancement of the penalty for a crime because the defendant is found to be a habitual criminal. In the former, the mandatory minimum sentence must be served consecutively to any other sentence imposed, because the statute for that crime requires it. In the latter, the law does not require the enhanced penalty to be served consecutively to any other sentence imposed. The sentence is left to the discretion of the court.

---

[77] *State v. Castillas*, 285 Neb. 174, 191, 826 N.W.2d 255, 268 (2013), *disapproved, State v. Lantz*, 290 Neb. 757, 861 N.W.2d 728 (2015).

[78] *State v. Berney*, 288 Neb. 377, 382-83, 847 N.W.2d 732, 736 (2014).

The question is whether the trial court's mistake of law amounted to an abuse of discretion in imposing Smith's sentences when the judge expressly stated that "even if [consecutive imposition of mandatory minimum sentences] was not required, . . . that would be appropriate given the time frames." The issue is unique, and we are unaware of any case law on point.

Nevertheless, we are concerned that the court's imposition of Smith's sentences on the convictions carrying mandatory minimum sentences may have *seemed* appropriate to the court because such sentences were ones thought to be required. This is not to say that the exact same sentences imposed with a full understanding of the law would be an abuse of discretion. Rather, we want to ensure that the court actually *exercised* its discretion and did not simply impose sentences that it thought were required. We therefore remand the cause for resentencing and do not reach Smith's argument that his sentences were excessive.

## VI. CONCLUSION

For the foregoing reasons, we affirm Smith's convictions. We remand the cause for resentencing in accordance with this opinion.

AFFIRMED AND REMANDED FOR RESENTENCING.