IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. GUTIERREZ


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

IVAN GUTIERREZ, APPELLANT.


Filed March 8, 2016.    No. A-15-647.


Appeal from the District Court for Hall County: TERESA K. LUTHER, Judge. Affirmed.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.


MOORE, Chief Judge, and INBODY and BISHOP, Judges.

INBODY, Judge.

## I. INTRODUCTION

Ivan Gutierrez appeals from his conviction by a jury of first degree assault, use of a deadly weapon to commit a felony, and third degree domestic assault. He contends that his trial counsel was ineffective in various respects and that the district court erred in not admitting the victim's blood alcohol test result taken at the hospital and in allowing testimony of Gutierrez' ethnicity and alleged hatred of Mexicans.

## II. STATEMENT OF FACTS

During the late evening hours of Friday, October 11, 2013, and the early morning hours of Saturday, October 12, Gutierrez, his wife, Alisha Jewell Gutierrez, and their two children were home. Somewhere between 9 and 11 p.m., after consuming about a fifth of Captain Morgan rum, Gutierrez went to his room in the back of the home and fell asleep. The parties' two young children

- 1 -

were also sleeping. Alisha's younger siblings, 23-year-old twins Ashley and Brandon Jewell, were also at the home.

Shortly after 12:30 a.m. the next morning, October 12, 2013, Alisha's friend Brenda Juarez and three of her friends arrived at Alisha's house, at Alisha's invitation, where they proceeded to drink and visit loudly. At approximately 12:45 a.m., Gutierrez came out from the back of the house upset because he did not know why there were people at the house so early in the morning. An altercation ensued between Gutierrez and Alisha in the kitchen with Gutierrez yelling at Alisha and grabbing and pulling Alisha's hair, at which point Alisha started to scream. Juarez and her friends left shortly thereafter.

Brandon and Alisha went outside and Brandon called his friend Eric Brooks to come get them. Brooks arrived in a maroon pickup with Trevr Melgaard and Nathan Salpas. Alisha got into the passenger side of the truck and locked the door. Gutierrez left the house, went to the passenger side of the truck and yelled at Alisha to get out of the truck. When Alisha did not comply, Gutierrez hit the window of the truck and again told her to get out of the truck. Alisha did not comply and Gutierrez hit the window of the truck again. At that point, Salpas grabbed Gutierrez. The two men were yelling, struggling, and ended up on the ground. Salpas was able to place Gutierrez in an arm bar, a defensive move used to restrain or immobilize a person, "where you put your legs across the other person's chest and put their arm between your legs, and you pull back and extend it and apply pressure." Salpas had Gutierrez' arm pinned for about 20 seconds and was pulling it back causing Gutierrez to yell. Salpas continued the hold a few seconds longer, then released Gutierrez.

After being released by Salpas, Gutierrez ran inside the house and came back outside with a black gun, stood at the bottom of the porch stairs, and pointed the gun at Salpas, Melgaard, Brooks and Brandon. Alisha yelled that the gun was "not a real gun." Salpas and Melgaard started laughing in relief that the gun was not real and Gutierrez went back inside the house. Gutierrez then came out of the house carrying a knife. Gutierrez ended up stabbing Salpas in the back portion of his left shoulder.

Officers arrived on the scene at approximately 3:30 a.m. to find a man on the ground leaning up against a pickup truck sitting in the driveway about 10 yards from the house and a group of five males in front of the residence. Grand Island police officer David Caldwell observed that the man sitting in the driveway was bleeding and yelling that he had been stabbed. The man had his right hand covering his left shoulder and Caldwell could see blood coming down the back left side of the man's body and there was a pool of blood forming around where the man was sitting on the ground. Caldwell was able to speak to the injured man and learned the man's name was Salpas. According to Caldwell, Salpas' speech was "very labored," he was "crying," "shaking," "yelling," and "[h]e seemed to be in a great deal of agony." Caldwell called for an ambulance which arrived approximately 4 to 5 minutes later. The ambulance transported Salpas to St. Francis Medical Center to treat the stab wound to Salpas' left shoulder which was approximately 5 centimeters long and 1 to 2 centimeters wide. Salpas subsequently developed a collapsed lung and a collection of some blood in his chest cavity.

Although Salpas was not able to identify the person who had stabbed him, he was able to tell officers that he was "hit in the back with something, and when he turned around, he saw the person later identified as [Gutierrez] standing there with a knife." Other witnesses at the scene,

including Brandon, Brooks, and Melgaard, identified Gutierrez as the person who stabbed Salpas. Gutierrez was arrested and placed in the back seat of Caldwell's patrol vehicle.

After Gutierrez waived his *Miranda* rights, Gutierrez told Grand Island police officer Tyler Noel that he and Alisha had been in an argument earlier that evening. Prior to that argument, he had been sleeping and was awakened by Alisha leaving the house stating that some friends were coming to pick her up and that Gutierrez told Alisha that she was not going to leave because they had small children in the home and they had both been drinking that evening. Gutierrez stated that after he advised Alisha that she was not going to leave, she got into the pickup and he attempted to open the door to the pickup. Gutierrez further stated that he scraped his elbows and knees on the ground during an altercation with Salpas. Gutierrez reported to Noel that he had stabbed Salpas, but he did not remember how he had stabbed him. Gutierrez told Noel that he had intended to use the BB pistol to scare the individuals off his property.

After receiving permission from Alisha to enter the residence to look for the knife and gun, Caldwell located an 8-inch chef's knife with a reddish stain on the blade laying on a drying rack in the kitchen sink. Noel located the gun, a black semi-automatic BB pistol, in a bedroom closet. Gutierrez was charged with first degree assault, use of a deadly weapon to commit a felony, and third degree domestic assault, first offense. A jury trial was held on April 21, 22, and 23, 2015. Numerous witnesses were called by the State and defense. The witnesses called by the State were Alisha, Juarez, Brandon, Salpas, Brooks, Melgaard, Caldwell, Noel, Officer Wendy Piercy, and Officer Sabra Ditter. The witnesses called on behalf of the defense were Dr. Scott Irvine, Ashley, and Gutierrez.

### 1. TESTIMONY REGARDING GUTIERREZ' ETHNICITY AND ALLEGED HATRED OF MEXICANS

The State adduced testimony from Alisha regarding Gutierrez' ethnicity and his feelings toward Mexicans. On direct examination by the State, Alisha admitted that she told officers that Gutierrez was upset because "there were Mexicans in the house" and "he didn't know who they were." During direct examination Alisha also admitted, over defense objection, that Gutierrez is of Hispanic descent and was also asked about Gutierrez' ethnicity and she responded that he is Cuban. Upon further questioning by the State, Alisha testified that Gutierrez "didn't care that [the people in the house] were Mexican." On cross-examination, Alisha testified that Gutierrez does not dislike Mexican people and that she did not tell officers that Gutierrez disliked Mexicans. Grand Island police officer Sabra Ditter contradicted this testimony. Ditter testified that during her interview of Alisha, Alisha told her that Gutierrez was angry because he disliked Mexicans. The court then instructed the jury that "the last testimony should be taken solely for the purpose of impeachment" of the prior witness' testimony "and not for the truth of the matter asserted."

Defense counsel also adduced evidence from Gutierrez' sister-in-law Ashley that Gutierrez was not mad because the men in his home were Mexican, he was mad and upset because he did not know who they were and they were being loud in his house. Ashley also testified that she has known Gutierrez for over 6 years and has been around Gutierrez when he had been around Mexicans and she had never known him to be prejudiced toward Mexicans. Gutierrez testified in his own defense denying that he hates Mexicans and that he has a lot of friends who are Mexican.

## 2. TESTIMONY SURROUNDING STABBING OF SALPAS

Alisha testified that when Gutierrez came outside of the house with the knife, he was in the doorway at the top of the porch stairs when Salpas lunged at Gutierrez and, bent over at the waist, attacked Gutierrez and Gutierrez stabbed Salpas in the back. Salpas then dragged himself over to the truck. On redirect examination, Alisha admitted that her in-court testimony was not consistent with her prior statements to police because she did not previously tell police that Salpas was stabbed attacking Gutierrez by the porch; rather, she told police that after Gutierrez came outside with the knife, she did not see what happened when Gutierrez got close to the truck because he and Salpas were on the driver's side of the truck. Gutierrez likewise testified that Salpas lunged at him while he was on the porch.

Melgaard and Brooks both testified that Salpas was near the driver's side of the truck when the stabbing occurred. Salpas denied charging at Gutierrez or approaching him head-on when Gutierrez was holding the knife, testifying that he was at the driver's side of his truck with his back to Gutierrez when he was stabbed.

## 3. SALPAS' BLOOD ALCOHOL TEST RESULTS

The defense called Dr. Irvine who treated Salpas at the emergency room. Dr. Irvine testified that when Salpas came into the emergency room, Salpas was "awake, alert, [and] seemed somewhat anxious." Because Salpas was a trauma patient, Dr. Irvine ordered a panel of blood tests, which included a blood alcohol test, as part of standard emergency room procedure for trauma patients. Upon questioning by defense counsel, Dr. Irvine testified that according to the lab result, there was alcohol present in Salpas' blood. A little later in questioning, defense counsel asked Dr. Irvine what Salpas' blood test results were. The State objected and conducted a voir dire examination of Dr. Irvine. During this voir dire examination by the State, Dr. Irvine testified that he did not think he would need the blood alcohol test result to assess Salpas' situation. The court sustained the State's objection. Upon further direct examination by defense counsel, Dr. Irvine testified he did not feel that he needed to order a blood alcohol test for Salpas and, if he was in the situation again and had to specifically order the blood alcohol test, he is not sure he would have needed to order that test.

## 4. JURY INSTRUCTIONS/VERDICT/SENTENCING

The court instructed the jury including giving the jury a self-defense instruction. The jury found Gutierrez guilty of the charged offenses. A restitution and sentencing hearing was held on June 22, 2015. The district court sentenced Gutierrez as follows: on count I, the court sentenced Gutierrez to 24 to 36 months' imprisonment with credit for 8 days served; on count II, the court imposed a sentence of 24 to 48 months' imprisonment; and, on count III, the court sentenced Gutierrez to 12 months' imprisonment with credit for 8 days served. The sentences on counts I and III were ordered to run concurrently and the sentence on count II was ordered to run consecutively to the other sentences. Additionally, Gutierrez was ordered to pay restitution of $27,060 at the rate of $451 per month for 60 months with the payments to begin 90 days after his release from incarceration.

### III. ASSIGNMENTS OF ERROR

On appeal, Gutierrez's assignments of error, consolidated and restated, are (1) the district court made erroneous evidentiary rulings in (a) not admitting Salpas' blood alcohol test result taken at the hospital and (b) allowing testimony of Gutierrez' alleged hatred of Mexicans; and (2) his trial counsel was ineffective in various respects.

### IV. ANALYSIS

#### 1. EVIDENTIARY ERRORS

Gutierrez's first assignment of error is that the trial court committed the following evidentiary errors: (a) failing to admit into evidence Salpas' blood alcohol test results and (b) allowing testimony of Gutierrez' alleged hatred of Mexicans over defense counsel's objection.

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id*. When judicial discretion is not a factor, whether the underlying facts satisfy the legal rules governing the admissibility of such evidence is a question of law, subject to de novo review. *Id*.

#### (a) Failure to Admit Salpas' Blood Test Results

Gutierrez contends that the district court erred in failing to admit Salpas' blood test results based upon an unspecified objection by the State. Gutierrez contends that without the blood test results quantifying Salpas' level of intoxication, prejudice existed because the level of Salpas' intoxication affected his ability to perceive and relate to what happened on the night of the incident.

The defense called Dr. Irvine as a witness. Dr. Irvine testified that when Salpas came into the emergency room he was "awake, alert, [and] seemed somewhat anxious." Because Salpas was a trauma patient, Dr. Irvine ordered a blood alcohol test as part of standard emergency room procedure for trauma patients. Upon questioning by defense counsel, Dr. Irvine testified that there was alcohol present in Salpas' blood. A little later in questioning, defense counsel asked Dr. Irvine what Salpas' blood test results were and the State objected. The State conducted a voir dire examination of Dr. Irvine and during this testimony, Dr. Irvine testified that he did not think he would need the blood alcohol test result to assess Salpas in his situation. The court sustained the State's objection. Dr. Irvine further testified on direct examination by defense counsel that he did not see that he needed to order a blood alcohol test for Salpas, and that if he was in the situation again and had to specifically order the blood alcohol test, he is not sure he would have needed to order that test.

In this case, Dr. Irvine testified that Salpas was "awake" and "alert" and that he did not think that a blood test result was necessary for Salpas but one was performed as part of standard emergency room procedure. There is nothing in the evidence that indicates that Salpas' ability to recall or recount events on the night of the incident was in any way impaired. Thus, the district court did not err in excluding Salpas' blood test results.

### (b) Allowing Testimony Regarding Gutierrez'
### Alleged Hatred of Mexicans

Gutierrez contends that the district court erred in allowing the State to present testimony of Gutierrez' ethnicity and alleged hatred of Mexicans. The following excerpt is a portion of the State's direct examination of Alisha:

Q: Do you remember explaining to the officer why your husband was so upset that people were at your house?

A: Yes.

Q: What, in fact, did you tell officers about why your husband was so upset?

A: That there were Mexicans in the house.

Q: And why would that have upset your husband?

A: Because he didn't know who they were

Q: Is your husband of Hispanic descent?

A: Yes.

[DEFENSE COUNSEL]: Your Honor, we object and move to strike.

THE COURT: Overruled.

. . .

Q: Why would he be upset that there were what he referred to as Mexicans in the house?

A: Because he didn't know who they were.

Q: Why would it upset him more that they were Mexicans?

[DEFENSE COUNSEL]: Again, objection, 403.

THE COURT: Objection overruled.

A: Can you say that again? I'm sorry.

. . .

Q: Why would he have cared that they were Mexican?

A: When they talk, it's different, like -- as if we were talking, we would know who we were talking about. When they talk, Cubans speak differently. Mexicans speak differently. It's not the same kind of nationality, or you know, ethnicity.

Q: So your husband is Cuban; is that what you're saying?

A: Yes.

Q: And he has a dislike for Mexican people?

A: No.

Q: Then my question remains: Why would he care that the people there were Mexican?

A: He didn't care that they were Mexican.

Relevant evidence is that which has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *State v. Scott*, 284 Neb. 703, 824 N.W.2d 668 (2012); *State v. Glazebrook*, 282 Neb. 412, 803 N.W.2d 767 (2011). The exercise of judicial discretion is implicit in

determining the relevance of evidence, and a trial court's decision regarding relevance will not be reversed absent an abuse of discretion. *State v. Scott, supra*; *State v. Glazebrook, supra.*

Alisha's testimony referred to the people in her home, not Salpas. Additionally, Gutierrez testified that Salpas did not appear Mexican to him and did not speak Spanish. We agree with Gutierrez that this testimony did not have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

However, when determining whether an alleged error is so prejudicial as to justify reversal, courts generally consider whether the error, in light of the totality of the record, influenced the outcome of the case. *State v. Davis*, 290 Neb. 826, 862 N.W.2d 731 (2015). Although we have determined that the aforementioned evidence was wrongly admitted, defense counsel adduced significant rebuttal evidence including the cross-examination of Alisha where she testified that her husband does not dislike Mexicans and she did not tell the police that Gutierrez did not like Mexicans and Gutierrez' own testimony in which he denied that he hates Mexicans and stated he has a lot of friends who are Mexican. Ashley testified that Brenda's friends were being "loud and obnoxious" and woke up Gutierrez, and Gutierrez did not know who the men were and asked them to leave. Defense counsel also adduced evidence from Gutierrez' sister-in-law Ashley that Gutierrez was not mad because the men were Mexican, he was mad and upset because he did not know who they were and they were being loud in his house. Ashley also testified that she has known Gutierrez for over 6 years and has been around Gutierrez when he had been around Mexicans and she had never known him to be prejudiced toward Mexicans. Further, Gutierrez himself testified that he could not tell whether or not Salpas was Mexican but that Salpas did not appear to him to be Mexican. In light of the totality of the record, the error in the admission of evidence was not so prejudicial so as to influence the outcome of the case. Thus, this assignment of error is without merit.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Gutierrez contends that his trial counsel was ineffective in the following ways: (a) failing to object to the State's improper impeachment of Alisha through testimony by Melgaard and Salpas; (b) failing to request jury instructions on defense of property; (c) failing to object to Melgaard's testimony that Gutierrez stated that he "realized he did something he should not have"; (d) failing to object to the State presenting evidence of Gutierrez' ethnicity and alleged hatred of Mexicans; (e) failing to object to Brooks' testimony regarding what Ashley said and the slamming on the glass door; (f) failing to object to Brooks' testimony about his worry about Ashley and the children; and (g) failing to preserve for appellate review Salpas' blood alcohol test results taken at the hospital.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Filholm,* 287 Neb. 763, 848 N.W.2d 571 (2014). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *Id.* On direct appeal, the resolution of ineffective assistance of counsel claims

turns upon whether the record is sufficient to adequately review the question. *Id*. This is because the trial record reviewed on appeal in a criminal case is devoted to issues of the defendant's guilt and innocence and does not usually address issues of counsel's performance. *Id*.

### (a) Failure to Object to Improper Impeachment

Gutierrez contends that his trial counsel was ineffective for failing to object to improper impeachment by the State. During cross-examination, Alisha testified that she saw Melgaard kick Gutierrez in the face 3 or 4 times and that immediately prior to being stabbed, Salpas charged at Gutierrez while Gutierrez was standing in the doorway of the house. The State asked Melgaard "So if a witness testified in this case that you kicked him in the face three or four times, that would not be true?" to which Melgaard responded "No, that's not." The State asked Salpas "If I told you that a witness had testified that you were stabbed when you were charging at the defendant, facing him, would that be true?" to which Salpas responded "If -- is that statement true? No." Defense counsel did not object to the State's aforementioned questions of either Melgaard or Salpas. The record on appeal is insufficient for us to address this claim.

### (b) Failure to Request Jury Instructions
### on Defense of Property

Gutierrez claims that his trial counsel was ineffective for failing to request that the jury be instructed on defense of property. Neb. Rev. Stat. § 28-1411 (Reissue 2008). He alleges the use of force is allowed against a trespasser and the use of deadly force is permitted when the violator is committing or attempting to commit a burglary. Brief for appellant at 21.

Section 28-1411, use of force for protection of property, provides, in part:

(1) Subject to the provisions of this section and of section 28-1414, the use of force upon or toward the person of another is justifiable when the actor believes that such force is immediately necessary:

(a) To prevent or terminate an unlawful entry or other trespass upon land or a trespass against or the unlawful carrying away of tangible, movable property; Provided, that such land or movable property is, or is believed by the actor to be, in his possession or in the possession of another person for whose protection he acts;

. . . .

(6) The use of deadly force is not justifiable under this section unless the actor believes that:

(a) The person against whom the force is used is attempting to dispossess him of his dwelling otherwise than under a claim of right to its possession; or

(b) The person against whom the force is used is attempting to commit or consummate arson, burglary, robbery or other felonious theft or property destruction and either:

(i) Has employed or threatened deadly force against or in the presence of the actor; or

(ii) The use of force other than deadly force to prevent the commission or the consummation of the crime would expose the actor or another in his presence to substantial danger of serious bodily harm.

The record is sufficient to address this claim and it is without merit. Trial counsel was not ineffective for failing to request a jury instruction on defense of property because the facts presented at trial were not sufficient to support a claim that Gutierrez believed that Salpas was attempting to dispossess him of his dwelling; nor that Salpas was attempting to commit or consummate arson, burglary, robbery, or other felonious theft or property destruction. Gutierrez argues that it was reasonable to believe an attempted burglary occurred because of the "window screen," "the loud awaking noise between the door and window of the house," "his unfamiliarity with Melgaard and Salpas, and the time of day, namely early morning." Brief for appellant at 22. However, Gutierrez' testimony reveals only that he brandished the knife because he "was afraid" for himself and for his "child that was behind [him]," and "afraid for [his] family." While such evidence would be relevant to his claim of self-defense, it does not support requiring a defense of property instruction. Thus, this claim is without merit.

### (c) Failure to Object to Testimony

Gutierrez also contends that his trial counsel was ineffective for failing to object to Melgaard's testimony that after stabbing Salpas, Gutierrez had backed away from Salpas and was trying to help him up, and it "[l]ooked like, I guess, that [Gutierrez] had realized, you know, he had done something he shouldn't have." There is no evidence in the record that would allow us to determine whether trial counsel consciously chose as part of a trial strategy not to object to this evidence or the reasons for not objecting to the evidence. Thus, the record on appeal is insufficient for us to review this claim.

### (d) Failing to Object to Evidence Regarding Gutierrez'
### Ethnicity and Alleged Hatred of Mexicans

Gutierrez claims that another way his counsel was ineffective was for failing to object, or making improper objections, to Alisha's testimony regarding Gutierrez' ethnicity and his alleged hatred of Mexicans. Having determined that the admission of this evidence was harmless error, Gutierrez cannot establish prejudice from defense counsel's failure to object. Thus, this assignment of error is without merit.

### (e) Failure to Object to Brooks' Testimony

Gutierrez further contends that his trial counsel was ineffective for failing to object to Brooks' testimony that when Ashley jumped on Gutierrez' back she said "you don't touch my sister like that" and then testifies that Gutierrez slammed Ashley against the glass door. There is no evidence in the record that would allow us to determine whether trial counsel consciously chose as part of a trial strategy not to object to this evidence or the reasons for not objecting to the evidence. Thus, the record on appeal is insufficient to review this claim.

### (f) Failure to Object to Other Portions
### of Brooks' Testimony

Gutierrez also alleged his trial counsel was ineffective for failing to object to another portion of Brooks' testimony where he testified that he had started to follow Gutierrez into the house because "Ashley and the kids were still [in the house], and I was kind of worried about them." There is no evidence in the record that would allow us to determine whether trial counsel consciously chose as part of a trial strategy not to object to this evidence or the reasons for not objecting to the evidence. Thus, the record on appeal is insufficient for us to review this assigned error.

### (g) Failure to Preserve Blood Alcohol
### Test Results for Appellate Review

Gutierrez' last allegation of ineffective assistance of trial counsel is that counsel was ineffective for failing to preserve for appellate review Salpas' blood alcohol test results taken at the hospital. Having determined that the district court did not err in refusing to admit the blood alcohol test results, Gutierrez cannot establish prejudice on this claim of ineffective assistance of counsel.

### V. CONCLUSION

For the reasons set forth previously, Gutierrez' convictions and sentences are affirmed. We specifically note that the record is insufficient for us to address multiple claims of ineffective assistance of counsel which have been raised on direct appeal.

AFFIRMED.